762 P.2d 904

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Donald Marshal HIGGINS, a/k/a Magic,
a/k/a Devon Montgomery,
Defendant–Appellant.**

**No. 9992.**

Court of Appeals of New Mexico.

Aug. 16, 1988.

Hal Stratton, Atty. Gen., Patricia Gandert, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Lynne Fagan, Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

MINZNER, Judge.

Defendant appeals from his convictions on three counts of fraud over $2,500, three counts of fraud over $100, one count of attempt to commit fraud over $20,000, and one count of forgery. The events on which the counts were based occurred in late 1985 and early 1986. We discuss (1) the sufficiency of the evidence as to counts I and II; (2) whether defendant should have been prosecuted under the Worthless Check Act (the Act), *see* NMSA 1978, Sections 30–36–1 to –9 (Repl.Pamp.1987), rather than the general fraud statute, *see* 1979 N.M.Laws ch. 119, Section 1 (codified as NMSA 1978, Section 30–16–6 (Repl.Pamp.1984); amended by 1987 N.M.Laws ch. 121, Section 2); (3) the sufficiency of the evidence as to counts III and IV; (4) whether defendant was denied due process and a fair trial because the trial court permitted testimony concerning other misrepresentations by defendant; (5) whether defendant was deprived of due process and a fair trial because the trial court denied his motion for a mistrial; and (6) whether the evidence was sufficient to sustain a conviction as to counts V and VI. For the reasons discussed below, we affirm in part and reverse in part.

*(1) Sufficiency of the Evidence to Support a Conviction on Counts I and II.*

Defendant argues his convictions for fraud on counts I and II are not supported by substantial evidence as to certain elements of the crime. In counts I and II, he was charged with defrauding two local financial institutions, contrary to Section 30–16–6, as it read prior to amendment.

In each case, defendant had opened an account, depositing a check he knew was not backed by sufficient funds. Although he was given starter checks to use until he printed checks, he was told he could not write checks or withdraw funds from the accounts for a definite number of days. Nevertheless, defendant wrote a number of checks, some of which were accepted by local businesses in exchange for merchandise. Both financial institutions became suspicious of defendant on the same day the accounts were opened, made some inquiries about the checks that had been deposited, determined they were not backed by sufficient funds or credit, and closed the accounts the same day they had been opened. Neither of the financial institutions involved advanced any funds to defendant or anyone else on the strength of the accounts, nor did they sustain any pecuniary losses as a result of defendant's activities. The jury was instructed that in order to convict defendant of fraud it must find, among other things, that defendant obtained property from the financial institution in the form of a false balance, that the false balance belonged to someone other than the defendant, and that the false balance had a market value of over $2,500 in the case of count I and over $100 in the case of count II. *See* SCRA 1986, 14–1640.

■ The record indicates that the term "false balance" describes the fact that defendant, for a brief period of time, was credited with a bank balance and the check on which the balance was based was not backed by sufficient funds. Assuming without deciding that the "false balance" is property within the meaning of Section 30–16–6, there is no evidence that it belonged to anyone else. It did not belong to the financial institutions where defendant opened the accounts, because it did not represent funds in those institutions but rather funds in another institution. It did not belong to the institution on which the check was drawn, because it does not represent funds actually on deposit in that institution.

In order to convict defendant of fraud, the state was required to prove the "false balance" belonged to someone else. It failed to do so. In addition, the state failed to prove that the property had the required market value.

■ The value of property obtained through fraud is its value at the time and place of the alleged offense. *See Tunnell v. State*, 99 N.M. 446, 659 P.2d 898 (1983). There is no evidence in the record that the "false balances" had the values on which the jury was instructed.

■ The state argues that defendant received something of value from the bank, because he was given starter checks. This argument must be rejected. The instructions given provide the relevant law as to this issue. *See State v. Martin*, 90 N.M. 524, 565 P.2d 1041 (Ct.App.1977). The jury was not instructed as to the starter checks. Moreover, there is no evidence in the record to show these checks had the market values on which the jury was instructed.

■ The essence of fraud is a taking or misappropriation, and the crime is complete when that occurs. If a defendant obtains something of value by fraudulent misrepresentations, the fact it is later repaid does not bar prosecution. *State v. McCall*, 101 N.M. 32, 677 P.2d 1068 (1984). In the instant case, however, there was no testimony establishing the "false balance" ever had any value. Proof of value is critical in a fraud prosecution. *See State v. Ross*, 104 N.M. 23, 715 P.2d 471 (Ct.App.1986). The state's reliance on *McCall* is misplaced.

*(2) Defendant Was Properly Tried Under the General Fraud Statute.*

Defendant contends he should have been prosecuted under the Act rather than the general fraud statute. We discuss this ar-

gument only as to counts III and IV, which involve checks written by defendant on his accounts, and not as to counts V, VI, and VII, which involve checks defendant convinced a companion to write on her account. *See State v. Libero,* 91 N.M. 780, 581 P.2d 873 (Ct.App.1978). Count III charged defendant with misappropriating hotel accommodations, the fair market value of which was $410 (fraud over $100); count IV charged defendant with misappropriating a cellular telephone, the fair market value of which was $2,538.12 (fraud over $2,500).

The record indicates that counsel for the state and for defendant argued at trial that a violation of the Act was a lesser included offense of the fraud statute. The jury was so instructed. Under these circumstances, we are not convinced that error was preserved. *Cf. State v. Padilla,* 104 N.M. 446, 722 P.2d 697 (Ct.App.1986) (defendant who requested instruction on lesser included offense waived his fundamental right to have evidence support verdict). Although defendant has characterized the issue as jurisdictional, no authority has been cited for that proposition. Nevertheless, for purposes of this appeal, we reach the merits of the issue. *Cf. In re Adoption of Doe,* 100 N.M. 764, 676 P.2d 1329 (1984) (issue not supported by cited authority will not be reviewed on appeal).

When a general statute and a specific statute both cover a particular subject matter, the specific statute is considered to have been enacted as an exception to the general statute, and, in a criminal case, defendant must be tried under the more specific statute. *State v. Blevins,* 40 N.M. 367, 60 P.2d 208 (1936). In determining whether the offenses covered by the two statutes are the same, this court looks to the language of the statute and the elements of the crime to determine whether the statutes condemn the same offense and require the same proof. *State v. Rhea,* 94 N.M. 168, 608 P.2d 144 (1980); *City of Farmington v. Wilkins,* 106 N.M. 188, 740 P.2d 1172 (Ct.App.1987); *State v. Gutierrez,* 88 N.M. 448, 541 P.2d 628 (Ct.App. 1975). In addition, since this rule is designed to implement the legislature's pur-

pose, *see State v. Blevins,* we may also consider the purposes and policies of the statutes as expressed by the legislature. *State v. Cuevas,* 94 N.M. 792, 617 P.2d 1307 (1980), *overruled on other grounds, State v. Pitts,* 103 N.M. 778, 714 P.2d 582 (1986). Thus, we examine the elements of the offenses in question.

■ The Act provides, in pertinent part:

It is unlawful for a person to issue in exchange for anything of value, with intent to defraud, any check, draft or order for payment of money upon any bank or other depository, knowing at the time of the issuing that the offender has insufficient funds in or credit with the bank or depository for the payment of such check, draft or order in full upon its presentation.

§ 30–36–4. In order to convict defendant under the Act, the state would be required to prove (1) defendant gave a check for an amount to a person or company; (2) the person or company gave money or a thing of value for the check; (3) when the defendant gave the check to the company, he knew there would be neither sufficient funds nor credit for payment of the check in full; and (4) defendant intended to cheat or deceive the person or company or another by use of the check. SCRA 1986, 14–1670.

The degree of the crime depends on the amount of the check issued; if the check is for less than $25, the penalty is not more than 30 days in jail or a fine of not more than $100 or both; if the check is for $25 or more, the penalty is not less than one or more than three years or the payment of a fine of not more than $1,000 or both. § 30–36–5.

The offense requires a specific intent to defraud. UJI Crim. 14–1670, Committee Commentary; *see also State v. Muzio,* 105 N.M. 352, 732 P.2d 879 (Ct.App.1987). Indeed, it has been said the gist of the offense is obtaining money or property by use of false pretenses. UJI Crim. 14–1670, Committee Commentary.

Fraud consists of the intentional misappropriation or taking of anything of value

which belongs to another by means of fraudulent conduct, practices, or representations. § 30–16–6. Under this statute, in order to convict, the state must prove (1) that defendant, by words or conduct, misrepresented a fact to the victim, intending to deceive or cheat the victim; (2) because of the misrepresentation and the victim's reliance on it, defendant obtained money or property; (3) the property belonged to someone other than defendant; and (4) the property had a market value as specified. UJI Crim. 14–1640. The market value of the property acquired by defendant determines the degree of the crime. *State v. Martinez*, 95 N.M. 795, 626 P.2d 1292 (Ct. App.1979).

Both crimes require proof of a specific intent to cheat or deceive someone. Both require proof that defendant obtained something of value by a misrepresentation. The giving of a check is a representation of fact that the drawer has sufficient funds or credit to cover the check. *See State v. Tanner*, 22 N.M. 493, 164 P. 821 (1917).

Nevertheless, there are also a number of differences between the two crimes. First, proof of fraud requires a showing the victim relied upon the misrepresentation, while proof of a violation of the Act does not. Second, proof of fraud requires a showing the property belonged to someone else, while proof of a violation of the Act does not. Third, the Act requires a showing that when defendant gave the check, he knew there would be neither sufficient funds nor credit for payment of the check in full, while the fraud statute contains no such requirement. Finally, the fraud statute is designed to protect persons and companies from being defrauded of valuable property by the misrepresentations of others. The Act, on the other hand, was designed to:

> [R]emedy the evil of giving checks on a bank without first providing funds in or credit with the depository on which they are made or drawn to pay or satisfy the same, which tends to create the circulation of worthless checks on banks, bad

banking, check kiting and mischief to trade and commerce.

§ 30–36–3.

The elements of the two crimes reflect the different purposes. Proof of fraud requires specific proof of the market value of the item obtained by defendant by means of the fraud. UJI Crim. 14–1640; *State v. Martinez*. Proof of a violation of the Act, however, requires proof of the amount of the check or, in other words, the loss to the victim. Our courts have specifically rejected the contention that fraud should be measured by the loss to the victim. *State v. Martinez*.

For these reasons, we conclude that the two statutes prohibit different offenses and that it would be inappropriate to view the Act as an exception to the fraud statute. *See State v. Reams*, 98 N.M. 215, 647 P.2d 417 (1982). Under these circumstances, the general/specific statute rule is not applicable. *See State v. Ibn Omar–Muhammad*, 102 N.M. 274, 694 P.2d 922 (1985), *appeal after remand*, 105 N.M. 788, 737 P.2d 1165 (1987); *State v. Gutierrez*.

*(3) Sufficiency of the Evidence to Support a Conviction on Counts III and IV.*

■ Defendant argues that counts III and IV are not supported by substantial evidence because the evidence fails to show the market value of the goods or services taken by defendant. The market value of an item is the price at which the property could ordinarily be bought or sold at the time of the alleged offense. SCRA 1986, 14–1602. The terms "market value" and "retail price" are identical, *Tunnell v. State*, and thus, evidence establishing one establishes the other. Moreover, a material fact necessary to support a verdict may be proved by inferences. *State v. Brown*, 100 N.M. 726, 676 P.2d 253 (1984). In the case of the hotel accommodations, the bill in the amount of $410 was in evidence. The jury could reasonably infer that the retail price of accommodations is the price shown on the bill rendered. In the case of the cellular telephone, the check written by defendant was in evidence and there was testimony that the check was written to

pay for the telephone. The jury was entitled to infer the retail price from the amount of the check.

*(4) Was Defendant Deprived of Due Process and a Fair Trial by Admission of Testimony of Other Misrepresentations by Defendant to Other Persons?*

Defendant argues he was deprived of due process and a fair trial because the trial court permitted others to testify about defendant's misrepresentations to them concerning his occupation, business activities, and wealth. The evidence was admissible. Other misrepresentations of an accused are admissible to establish motive, absence of mistake or accident, common scheme or plan, or the identity of the person charged with various crimes. *State v. McCallum*, 87 N.M. 459, 535 P.2d 1085 (Ct.App.1975). In the instant case, defendant's intent and motive were at issue at trial.

*(5) Was Defendant Deprived of Due Process and a Fair Trial When the Trial Court Denied His Motion for Mistrial?*

Defendant argues he was deprived of due process and a fair trial because the trial court denied his motion for a mistrial. The motion was made on the second day of trial. Defendant was ill that morning, and counsel moved for a one day continuance. The trial court indicated its concern that defendant was manipulating his physical condition in an attempt to push the trial beyond the final extension day. We note the extension in question extended the time for trial to commence; it did not require that the trial be concluded within the extension period. *See* SCRA 1986, 5–604(C). Defendant argues the trial court's remarks indicate a bias against defendant, and points to the trial court's denial of over 90% of his objections at trial as further evidence of this bias. These assertions do not establish the actual bias or prejudice necessary to disqualify a judge on the basis of prejudice. *See State ex rel. Anaya v. Scarborough*, 75 N.M. 702, 410 P.2d 732 (1966). The decision whether to grant a motion for mistrial is addressed to the sound discretion of the trial court, and is subject to review only for abuse of discretion. *State v. Gardner*, 103 N.M. 320, 706 P.2d 862 (Ct.App.1985). No abuse has been established.

*(6) Sufficiency of the Evidence to Sustain the Convictions on Counts V and VI.*

Defendant argues the evidence was insufficient to sustain his convictions under counts V and VI of the indictment because he never obtained title to the motor vehicles he took from the dealers. We disagree. The act of fraud is complete at the time of the taking or misappropriation. *State v. McCall.*

*Conclusion.*

Defendant's convictions on counts I and II are reversed as not supported by substantial evidence. Defendant's convictions on counts III, IV, V, VI, VII, and VIII are affirmed. This cause is reversed in part, affirmed in part, and remanded to the trial court for further action consistent with this opinion.

IT IS SO ORDERED.

BIVINS and APODACA, JJ., concur.