T.C. Memo. 2007-366

UNITED STATES TAX COURT

JAMES G. AND ELAINE A. WANCHEK, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17614-05.                    Filed December 11, 2007.

On their amended 2001 Federal income tax return, P's
claimed a theft loss deduction of $172,904 on the basis that
their contractor had committed fraud against them. R
disallowed the entire theft loss deduction and determined a
deficiency.

<u>Held</u>: Ps are not entitled to any theft loss deduction
for the 2001 taxable year.

<u>Paul A. Bleicher</u>, for petitioners.

<u>Vicki L. Miller</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, <u>Judge</u>:   This case is before the Court on a petition
for redetermination of a deficiency of $10,255 that respondent

determined for petitioners' 2001 taxable year.  The sole issue before the Court is whether petitioners are entitled to a theft loss deduction for the 2001 taxable year.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts and accompanying exhibits are hereby incorporated by reference into our findings.  Petitioners, husband and wife, resided in Tijeras, New Mexico, when they filed their petition.

In September 1994, petitioners and James Green (Mr. Green) entered into a preconstruction agreement for the construction of a new house.  Mr. Green hired Max Cabber (Mr. Cabber) to draw plans and assist in the design of petitioners' house.  On February 3, 1995, petitioners contracted with Mr. Green for the construction of a $190,900 house.[1]  Construction of petitioners' house was completed on August 4, 1995, and petitioners moved in that same day.

Sometime thereafter, petitioners began noticing problems with their new house.  Those problems escalated and became a living nightmare, despite various repair efforts by Mr. Green and the subcontractors.  On May 12, 1999, petitioners filed a civil lawsuit in the Second Judicial District Court of Bernalillo County, New Mexico (State court) against Mr. Green and several

---

[1] That contract was later revised as the result of change orders.  The total amount ultimately paid to Mr. Green was $196,183.

other parties[2] involved in the construction and design of petitioners' house. In their complaint, petitioners alleged negligence, negligent misrepresentation, fraud, unfair trade practices, breach of warranty, breach of duty of good faith and fair dealing, breach of contract, prima facie tort, and emotional distress.[3]

In October 2001, before trial, petitioners and the parties whom they had sued agreed to settle the lawsuit for $130,000, $40,500 of which was to be paid by Mr. Green. The settlement agreement provided, among other things, that no party was to admit "any responsibility or wrongdoing whatsoever." On February 4, 2002, the State court granted a joint motion to dismiss the lawsuit filed by petitioners and dismissed that lawsuit with prejudice. No criminal charges were ever filed against Mr. Green, or any of the other parties involved in the design and construction of petitioners' house, for any matter relating to the design and construction of petitioners' house.

In January 2003, petitioners filed a Form 1040X, Amended U.S. Individual Income Tax Return, for the 2001 taxable year in which they claimed a net theft loss deduction of $172,904 for

---

[2] Those parties included Mr. Cabber and, ultimately, eight subcontractors.

[3] Petitioners also filed three amended complaints. Those amended complaints, other than adding as defendants two of the eight subcontractors, do not differ materially from the original complaint so as to warrant discussion.

that taxable year.[4]  This claimed loss eliminated their taxable income for 2001 and resulted in a refund of the claimed $10,225 overpayment plus any statutory interest.  Respondent then audited the amended 2001 Federal income tax return and, on June 15, 2005, issued the aforementioned notice of deficiency denying the claimed theft loss deduction.  Petitioners filed a timely petition with this Court, and a trial was held on November 28, 2006, in Albuquerque, New Mexico.

## OPINION

### I.  Parties' Contentions

Citing section 165(c)(3),[5] petitioners assert entitlement to a theft loss deduction on the basis that Mr. Green committed "fraud" within the meaning of New Mexico law.  In essence, they contend that Mr. Green took money from them intending not to conform with the plans that he had agreed to follow in constructing their house.  Acknowledging that they must rely on circumstantial evidence to prove Mr. Green's intent to defraud them, petitioners assert that the magnitude of Mr. Green's noncompliance with the construction plans "is not accidental."

---

[4] The manner in which petitioners arrived at that amount is subject to dispute.  In light of our ultimate disposition, however, we need not delve into that issue.

[5] Unless otherwise noted, all section references are to the Internal Revenue Code of 1986, as amended and in effect for the taxable year at issue.  The Rule reference is to the Tax Court Rules of Practice and Procedure.

Petitioners go on to point out that (1) "landfill was added to the sides of the house to hide the fact that foundations were improperly set"; (2) "the location of the sewer" and "the thickness of the stucco" did not conform to the housing plan, without notice to petitioners; and (3) Mr. Green misrepresented that the land was "engineered," when "there was no engineering of the soil besides grading." Petitioners assert that Mr. Green misrepresented the quality of his houses and his role in their construction in promotional materials and misrepresented that Mr. Cabber was an architect. Petitioners further assert that "Mr. Green had no intention to cure or even acknowledge any defects and he made himself absent from the state by moving to Las Vegas."

Respondent contends that petitioners have failed to prove that Mr. Green's conduct constituted a theft under New Mexico law. Respondent notes that Mr. Green obtained the requisite building permit, hired subcontractors whom he had worked with before, was present at the construction site on a daily basis, oversaw the subcontractors' work, and, once construction of petitioners' house was completed, received a certificate of occupancy from the county. With respect to Mr. Cabber's credentials, respondent notes that neither the preconstruction agreement nor the contract provided that an architect would design petitioners' house and that petitioners never asked Mr.

Cabber or Mr. Green whether Mr. Cabber was an architect. Regarding Mr. Green's representations as to the "fine quality" of his houses, respondent asserts that even petitioners have conceded such a term is subjective and that Mr. Green believes that he provided the highest quality work. When petitioners discovered defects in their house, respondent observes that, until Mr. Green moved to Las Vegas in 1998, and even after the 1-year warranty period had expired, he sent repairmen to fix those defects. Respondent's ultimate contention is that this is a contractual dispute, not a criminal matter. In that regard, respondent notes that this dispute was the subject of a civil suit, that the civil suit settled with no admission of fault, and that no criminal complaint was ever filed in this matter. Finally, respondent addresses this Court's decisions dealing with similar situations and asserts that this case is like those in which this Court has disallowed theft loss deductions.

II. Theft Loss

Deductions are a matter of legislative grace, and the taxpayer must maintain adequate records to substantiate the amounts of any deductions or credits claimed. Sec. 6001; INDOPCO Inc. v. Commissioner, 503 U.S. 79, 84 (1992); sec. 1.6001-1(a), Income Tax Regs. As a general rule, the Commissioner's determination of a taxpayer's liability in the notice of deficiency is presumed correct, and the taxpayer bears the burden

of proving that the determination is improper. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). But see sec. 7491(a).

Section 165(a) allows a taxpayer to deduct any loss sustained during the taxable year that is not compensated for by insurance or otherwise. Section 165(c)(3), which limits losses for individuals, allows an individual taxpayer to deduct losses of property arising from, among other things, theft. The existence of a theft must be determined by reference to the law of the jurisdiction in which the loss occurred; however, a criminal conviction is not necessary in order for a taxpayer to demonstrate a theft loss. See Monteleone v. Commissioner, 34 T.C. 688, 692-694 (1960).

The New Mexico Criminal Code does not list "theft" as a crime. See McCullough v. Commissioner, T.C. Memo. 1990-653 ("The New Mexico Criminal Code does not specifically make 'theft' a crime."). Under New Mexico law, fraud, the crime Mr. Green allegedly committed against petitioners, is "the intentional misappropriation or taking of anything of value that belongs to another by means of fraudulent conduct, practices or representations." N.M. Stat. Ann. sec. 30-16-6 (LexisNexis Supp. 2006). The elements of criminal fraud include "a specific intent to cheat or deceive someone." State v. Higgins, 762 P.2d 904, 908 (N.M. Ct. App. 1988). "Intent is seldom provable by direct

testimony" and usually "must be proved by the reasonable inferences shown by the evidence and the surrounding circumstances." State v. Ortiz, 563 P.2d 113, 116 (N.M. Ct. App. 1977). Finally, petitioners must prove a theft under applicable State law only by a preponderance of the evidence, not beyond a reasonable doubt. See Allen v. Commissioner, 16 T.C. 163, 166 (1951) ("If the reasonable inferences from the evidence point to theft, the proponent is entitled to prevail. If the contrary be true and reasonable inferences point to another conclusion, the proponent must fail.").

Petitioners have fallen short of proving that Mr. Green possessed the specific intent to cheat or deceive them when he took their money in exchange for building their house. To begin with, Mr. Green's general representations in his promotional materials regarding the quality of his work amounted to no more than sales talk, or puffing.[6] For instance, Mr. Green's statements in his promotional materials that his houses are "built with unyielding allegiance to quality and craftsmanship" and that "As a builder, James Green is unequalled" merely represented Mr. Green's opinion of his own work. Such statements, in this context, do not constitute fraud.

---

[6] "'"Puffing" means an exaggerated commendation of wares or worth in communications addressed to the public or to a class or group.'" West v. Commissioner, 88 T.C. 152, 163 (1987) (quoting Utah Code Ann. sec. 76-6-405 (1978)).

Petitioners also argue that because Mr. Green himself had no qualifications in any trade, Mr. Green's promotional materials fraudulently reflected that he would personally supervise the construction of their house. We disagree. Even though Mr. Green has admitted that he lacked the technical ability to perform many of the tasks performed by the subcontractors, there is a fundamental flaw in petitioners' argument. The fact that Mr. Green, a homebuilder, could not do the job himself does not render fraudulent his statement that he would supervise the work to ensure quality control. Petitioners have not alleged, and the record does not reflect, that Mr. Green ever made a false statement of fact regarding his technical skills.[7] We will not find fraud by conjecture.[8]

Petitioners' contention that Mr. Green defrauded them by misrepresenting that Mr. Cabber was an architect is equally unavailing. Aside from petitioners' testimony, there is no evidence that Mr. Green ever represented that Mr. Cabber was an

[7] For example, Mr. Green never represented that he was a licensed electrician, plumber, or carpenter, etc. The fact that petitioners might have incorrectly assumed that Mr. Green possessed certain technical skills does not render fraudulent any of Mr. Green's representations.

[8] In the end, it is telling that petitioners would have us infer fraud from Mr. Green's promotional materials when those promotional materials contain clear factual statements regarding Mr. Green that petitioners fail to challenge and that, if proven false, might lend significant support to an argument that Mr. Green committed fraud. For example, Mr. Green represented that he had "won five major awards over the years," including State Achievement in Building Excellence awards in two categories.

architect.  Neither the preconstruction agreement nor the contract contains such a representation.  Moreover, even assuming arguendo that Mr. Green at one time misrepresented Mr. Cabber as an architect, we would have no basis to conclude that such a misrepresentation was coupled with an intent to cheat or deceive petitioners.[9]

Nor does the fact that specifications in the construction plans might not have been met shed light on Mr. Green's intent; it is certainly not determinative evidence of fraud on Mr. Green's part.  At most, Mr. Green's failure to carry out the construction plans constitutes a breach of contract or negligence on his part.  Petitioners' position ignores the fact that, in addition to Mr. Green, there were at least nine other parties involved in the design and construction of petitioners' house.[10] Because so many parties were involved in designing and building petitioners' house, any fraud perpetrated by Mr. Green would likely have involved some or all of those other parties.  If Mr. Green had intended to deceive petitioners through a scheme of such proportions, we would expect that petitioners would present

---

[9] In their reply brief, petitioners assert that Mr. Cabber was providing architectural services in violation of the New Mexico Architectural Act.  In our view, the veracity of that allegation has no bearing on whether Mr. Green defrauded petitioners.

[10] Petitioners' civil suit was against Mr. Green and those nine other parties.

more than weak circumstantial evidence buttressed by scant allegations.

Petitioners' case is not novel.  This Court has addressed similar issues in a number of cases.  For the most part, as in this case, the Court has found against taxpayers on the basis that they had not proven that the contractors acted with the requisite intent to constitute a theft crime.  See Friedman v. Commissioner, T.C. Memo. 1992-588, affd. without published opinion 48 F.3d 535 (11th Cir. 1995); Schneider v. Commissioner, T.C. Memo 1981-603; Godine v. Commissioner, T.C. Memo. 1977-393; Price v. Commissioner, T.C. Memo. 1971-323.

The few cases in which this Court has allowed theft loss deductions involved contractors who took money from taxpayers under false pretenses and then either absconded or ceased construction and used the money for purposes not related to the construction agreement.  See Norton v. Commissioner, 40 T.C. 500 (1963), affd. 333 F.2d 1005 (9th Cir. 1964); Miller v. Commissioner, 19 T.C. 1046 (1953); see also Hartley v. Commissioner, T.C. Memo. 1977-317.  Mr. Green did not take petitioners' money and run.  To the contrary, although the quality of the construction was not what petitioners had bargained for, Mr. Green completed the job and made some repairs. The circumstantial evidence does not demonstrate that Mr. Green ever intended to defraud petitioners.  Nor is our conclusion

altered by the fact that, years after constructing petitioners' house, Mr. Green left the homebuilding business and moved out of New Mexico. Petitioners were the victims of poor workmanship, which, without more, is not a crime.

The Court has considered all of petitioner's contentions, arguments, requests, and statements. To the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant.[11]

To reflect the foregoing,

An appropriate order and decision will be entered.

---

[11] Because petitioners have not sustained a theft loss, we need not discuss issues relating to the amount of the claimed loss. Also, respondent filed a motion in limine to prevent the testimony of two experts. Because we hold for respondent without considering that evidence, the question of whether that evidence should be admitted is also moot, and respondent's motion will therefore be denied.