This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37105**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**JOHN C. PACHECO,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY**
**Steven Blankinship, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellee

The Law Office of Scott M. Davidson, Ph. D., Esq.
Scott M. Davidson
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}** Defendant John Pacheco appeals his conviction for fraud over $20,000. Defendant raises three issues. First, he challenges the sufficiency of the evidence supporting his conviction. Second, he contends the district court's exclusion of eBay and Craigslist postings for sales of concession trailers was an abuse of discretion. Third, he argues that cumulative error warrants reversal. We affirm.

## BACKGROUND

**{2}**     Defendant was charged with one count of fraud over $20,000, contrary to NMSA 1978, Section 30-16-6(F) (2006). The district court subsequently granted Defendant's Rule 5-601 NMRA motion to dismiss. This Court reversed the dismissal in *State v. Pacheco*, 2017-NMCA-014, 388 P.3d 307, and remanded the case for trial.

**{3}**     The following evidence was presented during Defendant's bench trial. In February 2012 Defendant offered to purchase Richard Aguilar's (Aguilar) business, Coffee Pronto, located in Ruidoso, New Mexico, for $43,000. Defendant disclosed his assets, including a concession trailer he claimed was worth $65,000, to convince Aguilar that he would not default on the purchase. Aguilar accepted the offer. He and Defendant signed a two-year purchase agreement in which Defendant agreed to pay for the business by making: (1) a $5,000 down payment; (2) twenty-four monthly payments of $600; (3) a second payment of $5,000; and (4) a balloon payment of $18,600 at the end of the two year term. Defendant made the down payment and the first three payments.

**{4}**     When the fourth payment was due, Defendant e-mailed Aguilar, who had since moved to Oklahoma City, Oklahoma, stating that he was going to walk away from the purchase agreement unless Aguilar agreed to lower the price to $24,000, lower his monthly payments to $350, and allow him to make a balloon payment at the end of the second year. Defendant alternatively proposed that Aguilar accept his concession trailer in exchange for release of the remaining $36,200 debt, asserting that he had the original manufacture purchase invoices for the trailer and the added equipment. The following morning, Defendant emailed Aguilar various photographs of the concession trailer as well as two invoices. The invoices showed that Defendant paid $32,821 for the concession trailer and $10,275 for additional equipment. Believing the invoices to be genuine, and that they showed the trailer and equipment were worth more than what Defendant owed him, Aguilar accepted the concession trailer and equipment as payment for Defendant's $36,200 debt. On July 13, 2012, Aguilar signed an agreement releasing Defendant from his debt. Aguilar took possession of the trailer and transported it to Oklahoma City, Oklahoma, where he listed it for sale. Aguilar soon discovered the invoices misrepresented the price Defendant paid for the concession trailer and equipment.

**{5}**     Ruidoso Police Detective Ray Merrit investigated the transaction between Defendant and Aguilar. Detective Merrit obtained copies of the original invoices related to Defendant's purchase of the trailer and equipment. Those invoices revealed: (1) Defendant purchased the trailer for $12,243.18; (2) Defendant paid $2,690 for the equipment; (3) the equipment Defendant purchased was different than what Defendant represented on the invoices; and (4) Defendant had deleted the address and phone number for the business from the invoices. Detective Merrit interviewed Defendant who admitted to altering the invoices before providing them to Aguilar, claiming that he did so to reflect what he believed the trailer was worth.

**{6}** Unable to sell the concession trailer on his own, Aguilar took the trailer to a large auction house, which sold the trailer on August 11, 2012, for $11,894.50. After paying the costs associated with the sale, Aguilar recovered $8,726.46. On September 10, 2012, Aguilar filed a UCC-1 Financing Statement to "show[] that there was still money owed." The district court found Defendant guilty of fraud over $20,000. This appeal followed.

## DISCUSSION

### I. Sufficiency of the Evidence Supporting Defendant's Conviction

**{7}** Defendant argues that the State presented insufficient evidence to support his fraud conviction. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). We "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. The question on appeal is whether the trial court's "decision is supported by substantial evidence, not whether the [district] court could have reached a different conclusion." *In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 15, 121 N.M. 562, 915 P.2d 318. We therefore disregard all evidence and inferences that support a different result. *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

**{8}** In order to convict Defendant of fraud as charged in this case, the State was required to prove beyond a reasonable doubt that Defendant: (1) by any words or conduct, misrepresented a fact to Aguilar; (2) intended to deceive or cheat Aguilar; (3) because of the promise or representation and Aguilar's reliance on it, Defendant obtained property or money valued in excess of $20,000; (4) the property or money belonged to someone other than Defendant; and (5) the fraud took place in New Mexico. *See* § 30-16-6(F); UJI 14-1640 NMRA (essential elements of fraud instruction).

### A. Defendant Misrepresented Facts

**{9}** With regard to the first factor, Defendant provided Aguilar with falsified invoices on which he inflated the amount he paid for the trailer and equipment by over $28,000. The falsified invoices also misrepresented what equipment Defendant purchased for the trailer. This evidence is sufficient to establish that Defendant misrepresented a fact, specifically, the amount of money he paid for the trailer and equipment, what equipment he purchased, and that the invoices were the original manufacture purchase invoices.

### B. Defendant Intended to Deceive and/or Cheat Aguilar

**{10}** "[A]n individual's intent is seldom subject to proof by direct evidence, [and] may be proved by circumstantial evidence." *State v. Allen*, 2000-NMSC-002, ¶ 65, 128 N.M.

482, 994 P.2d 728 (internal quotation marks and citation omitted). In this case, Defendant asked Aguilar to accept the concession trailer in exchange for release of his $36,200 debt. Defendant provided Aguilar with invoices that represented he paid $43,096 for the trailer and equipment when in fact he only paid $14,933. This evidence supports the second factor and the district court's reasonable inference that Defendant intended to deceive Aguilar as to the value of the concession trailer and to cheat him by inducing the release of his debt in exchange for the trailer. *See State v. Crews*, 1989-NMCA-088, ¶ 16, 110 N.M. 723, 799 P.2d 592 (affirming that "[i]ntent to defraud can reasonably be inferred from the actions of [the] defendants in furnishing incorrect documentation").

### C.      Aguilar Relied on Defendant's Misrepresentations

**{11}**    With regard to the third factor, Defendant contends "materiality" is an element of fraud and that "[e]ven assuming [Defendant's] statements were false"[1] they were not "material where the release agreement made no reference to these prices."[2] We disagree. In, *State v. Garcia* our Supreme Court explained that to establish the reliance element of fraud, the state must prove that a particular misrepresentation of fact "induced the victim to act in a way that the victim would not have otherwise acted." 2016-NMSC-034, ¶ 18, 384 P.3d 1076 (internal quotation marks and citation omitted).

**{12}**    Aguilar testified that he would never have signed the release agreement had he been provided the original invoices, and that the purported original manufacturer's invoices were "very" important to him because "that's what . . . established the value for the trade for releasing [Defendant] from the contract." Aguilar believed that execution of the release agreement for consideration of the trailer satisfied Defendant's $36,200 obligation under the original purchase agreement. This testimony is sufficient to establish that Aguilar relied on Defendant's misrepresentations. We reiterate the question is not whether there is evidence from which the district court could have reached a different conclusion but rather whether substantial evidence supports its conclusion. *In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 15. Aguilar's testimony along with the invoices, are sufficient to prove that Defendant's misrepresentations induced Aguilar to release him from his debt, which he would not have otherwise done.

**{13}**    To the extent Defendant directs us to Aguilar's testimony in a corresponding civil case and a UCC-1 Financing Statement filed by Aguilar, to show the falsified invoices were not material to Aguilar's decision to enter into the release agreement, we remain unpersuaded because we do not reweigh potential conflicting evidence on appeal. *See State v. Salas*, 1999-NMCA-099, ¶ 13, 127 N.M. 686, 986 P.2d 482 (recognizing that it is for the fact-finder to resolve any conflict in the testimony of the witnesses and to determine where the weight and credibility lie).

---

1A comparison of the invoices Defendant provided to Aguilar to the invoices subpoenaed from the manufacturer, not to mention Defendant's admission to altering the invoices, indisputably reveals that Defendant made false representations regarding his purchases of the trailer, related equipment, and authenticity of the invoices.
2The fictitious invoices are exhibits to the release agreement

## D.    Defendant Obtained Property or Money Valued in Excess of $20,000

**{14}**    Defendant contends the State failed to prove anything "of value was transferred to [Defendant] as a result of the alleged fraud." Defendant draws our attention to the fact that Aguilar did not transfer title to the coffee kiosk and that the UCC-1 Financing Statement indicated that he still retains an ownership in the coffee kiosk.

**{15}**    Defendant's argument conflates the transfer of value under the purchase agreement for the value conferred by the release agreement. Regardless of whether title transferred pursuant to the purchase agreement, or whether Aguilar retained an ownership interest in the business,[3] Defendant was still contractually obligated to satisfy the debt thereunder, a debt amounting to approximately $36,200. By virtue of his misrepresentation, Defendant induced Aguilar to release him from this obligation and therefore received the value of the released debt. *Cf. Sanchez v. Saylor*, 2000-NMCA-099, ¶¶ 14-16, 129 N.M. 742, 13 P.3d 960 (concluding that promissory notes which had been forgiven and released had compensable value). Even if we account for the amount Aguilar eventually received from the sale of the trailer, Defendant still received a value of approximately $27,473, an amount greater than the $20,000 required to establish fraud in the second degree.

**{16}**    To the extent Defendant again directs us to Aguilar's testimony in the corresponding civil case and the UCC-1 Financing Statement, suggesting it is evidence of the State's failure to demonstrate the transfer of value or value exceeding $20,000, we do not consider potential contrary evidence when evaluating the sufficiency of the evidence. *Rojo*, 1999-NMSC-001, ¶ 19; *Salas*, 1999-NMCA-099, ¶ 13.

**{17}**    Finally, we decline to address Defendant's argument that Aguilar's efforts to sell the trailer should somehow mitigate his culpability, as the argument is unsupported by any relevant authority. "Where arguments in briefs are unsupported by cited authority, we assume that counsel, after diligent search, was unable to find any supporting authority." *State v. Bregar*, 2017-NMCA-028, ¶ 48, 390 P.3d 212 (alterations, internal quotation marks, and citation omitted)). In the absence of citation to authority we decline to address Defendant's argument. *See State v. Nozie*, 2009-NMSC-018, ¶ 15, 146 N.M. 142, 207 P.3d 1119 ("[A]n appellate court is not required to review issues raised in appellate briefs that are unsupported by cited authority." (internal quotation marks and citation omitted)); *State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 ("[A]ppellate courts will not consider an issue if no authority is cited in support of the issue and that, given no cited authority, we assume no such authority exists."). Accordingly, we hold that sufficient evidence supports Defendant's conviction.

---

3We note that though Defendant contends the UCC-1 Financing Statement evidences a continued ownership interest, at most the financing statement represents a security interest and does not necessarily equate to an ownership interest. *See Alvin, Inc. v. Manis*, 1998-NMCA-011, ¶ 5, 124 N.M. 544, 953 P.2d 309 ("The purpose of a financing statement is to notify third parties of the possibility of prior encumbrances and alert them to the need for investigation." (internal quotation marks and citation omitted)); *see also* NMSA 1978 § 55-9-102(a)(32) (2013) (defining "encumbrance" as a "a right, other than an ownership interest, in real property").

## II. The District Court Properly Excluded Defendant's Collection of Internet Listings

**{18}** Defendant argues the district court improperly excluded printouts of eBay and Craigslist listings of "comparable" concession trailers during his bench trial. Defendant specifically contends it was error to exclude the sales listings because they were: (1) "probative evidence of the approximate market value of the concession trailer"; (2) showed the ease with which Aguilar could have discovered such information; and (3) demonstrated that Aguilar could have sold the trailer for an amount that made him whole under the release agreement thereby negating "the State's contention of fraud." The State responds that the market value of the trailer is irrelevant and that each of its trial objections supported the exclusion of the listings.

**{19}** We review the "admission or exclusion of evidence for abuse of discretion." *State v. Suazo*, 2017-NMSC-011, ¶ 9, 390 P.3d 674 (internal quotation marks and citation omitted). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize [the ruling] as clearly untenable or not justified by reason." *Rojo*, 1999-NMSC-001, ¶ 41 (internal quotation marks and citation omitted).

**{20}** The facts surrounding Defendant's attempt to introduce the listings are as follows. During cross-examination, defense counsel showed Aguilar a collection of eBay and Craigslist listings for concession trailers that were used as evidence in the related civil trial. Aguilar did not recognize the listings. The State objected to the admission of the listings arguing:

> There's no foundation . . . . The witness has testified he doesn't recognize this document. He can't lay the proper foundation. My understanding is that counsel is the one that printed these off. But they're also advertisements for what people are asking, not what people paid. But they're also hearsay. They're also not disclosed.

> I got this today in the middle of trial. The first time I've seen it, so it violates [Rule 5-]502 [NMRA]of the rules of criminal procedure and all of those, you know, hearsay, relevance, [Rule 11-]403 [NMRA].

The district court sustained the State's objection without explanation.

### A. Defendant Failed to Establish the Relevance of the Listings

**{21}** "Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence, and . . . the fact is of consequence in determining the action." Rule 11-401 NMRA. Defendant's primary argument relies on an erroneous conflation of the market value of the trailer with the value received by virtue of the released debt. While seemingly related, as we explain below, evidence of the

trailer's potential market value is not relevant to the fact finder's determination of whether Defendant received value exceeding $20,000 at the time fraud occurred.

**{22}**　The State was required to establish Defendant obtained property or money valued in excess of $ 20,000. Section 30-16-6(F). Fraud is complete upon taking or misappropriation. *See State v. Higgins*, 1988-NMCA-072, ¶ 8, 107 N.M. 617, 762 P.2d 904 ("The essence of fraud is a taking or misappropriation, and the crime is complete when that occurs."). Significantly, pecuniary loss by a victim is not required for fraud to occur. *See State v. Clifford*, 1994-NMSC-048, ¶ 16, 117 N.M. 508, 873 P.2d 254 (stating that "a criminal conviction for fraud does not require that the victim suffer a pecuniary loss"). Rather, "the degree of the crime must be measured by the value of the property obtained by the defendant as a result of the deception, rather than the value of any property received by the victim." *State v. Martinez*, 1979-NMCA-104, ¶ 14, 95 N.M. 795, 626 P.2d 1292 (internal quotation marks and citation omitted). Therefore even if—as Defendant argues—the internet listings could be used to show that Aguilar might have recovered more money for the trailer, such a fact is of no consequence to the question before the district court i.e. whether the value conferred to Defendant, at the time the release agreement was signed, was in excess of $20,000.

**{23}**　Defendant's contention that the availability of comparative sales information is relevant to the question of fraud is also unavailing. Defendant's argument suggests a requirement that the victim's response to the fraud be reasonable. This argument is akin to the Defendant's arguments regarding sufficiency and is similarly unsupported by authority and undeveloped. Thus we assume counsel was unable to find any supporting authority. *Bregar*, 2017-NMCA-028, ¶ 48. Accordingly, we conclude that Defendant has failed to show how the internet sales listings were relevant to the matter before the district court. *See State v. Duffy*, 1998-NMSC-014, ¶ 31, 126 N.M. 132, 967 P.2d 807 ("The proponent of the evidence bears the burden of affirmatively demonstrating its relevance."), *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37, 275 P.3d 110.

### B.　The Internet Listings Were Hearsay

**{24}**　Even if the sales listings were relevant, they constituted inadmissible hearsay. "Hearsay" is "a statement that (1) the declarant does not make while testifying at the current trial or hearing, and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Rule 11-801(C) NMRA. In order to constitute probative evidence of the trailer's market value, the trier of fact would have to rely on the multiple out-of-court descriptions of the trailers and assume: the accuracy of the descriptions, the validity of the assigned sales listing, and that a buyer would purchase the trailer for the asking amount. Because Defendant sought to use the out-of-court statements contained on the sales listings for the truth of the matter asserted, we conclude the exhibits were properly excluded as hearsay.

**{25}**　To the extent Defendant additionally argues that the listings were proffered to show: (1) publicly available sources of information concerning the market for concession

trailers; and (2) that market prices are "a little bit different" than the price the trailer was ultimately sold for, both contentions still require the trier of fact to accept as true the out-of-court statements made in the listings. Therefore, we conclude this argument is without merit.

**{26}** Because we conclude the exhibits were excludable for lack of relevance and as hearsay, it is unnecessary to address whether Defendant laid a proper foundation for the admission of the listings. To the extent Defendant argues the district court abused its discretion because it could have taken judicial notice of the exhibits, our review of the record reveals that Defendant did not ask the district court to take judicial notice. See *State v. Leyva*, 2011-NMSC-009, ¶ 36, 149 N.M. 435, 250 P.3d 861 (explaining that the preservation rule requires the parties to state the applicable legal principle and develop the facts in the district court to adequately alert the court to the claim and provide it an opportunity to correct a problem and to afford the opposing party a fair opportunity to respond to the claim). Nor does Defendant expand on this argument or explain which provision of Rule 11-201 NMRA, permits the district court to take judicial notice of evidence admitted in the civil case. This Court will not develop arguments for parties. We therefore decline to consider Defendant's claim. *State v. Garcia*, 2019-NMCA-056, ¶ 51, 450 P.3d 418 (citing *Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53).

### III. Defendant's Bench Trial Was Free of Cumulative Error

**{27}** Defendant contends that cumulative error deprived him of a fair trial and therefore he is entitled to a new trial. Having identified no error at trial, we recognize no cumulative error. *See State v. Saiz*, 2008–NMSC–048, ¶ 66, 144 N.M. 663, 191 P.3d 521 (stating that "where there is no error to accumulate, there can be no cumulative error."), *abrogated on other grounds by State v. Belanger*, 2009-NMSC-025, ¶ 36, 146 N.M. 357, 210 P.3d 783.

### CONCLUSION

**{28}** For the foregoing reasons, we affirm Defendant's convictions.

**{29} IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**LINDA M. VANZI, Judge**

**BRIANA H. ZAMORA, Judge**