2008-NMCA-049

182 P.3d 775

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Lawrence CALDWELL, Defendant–Appellant.**

**No. 26,322.**

Court of Appeals of New Mexico.

Jan. 28, 2008.

Certiorari Denied, No. 30,933, March 7, 2008.

Gary K. King, Attorney General, Ann M. Harvey, Assistant Attorney General, Santa Fe, NM, for Appellee.

John Bigelow, Chief Public Defender Nancy M. Hewitt, Appellate Defender Santa Fe, NM for Appellant.

## OPINION

FRY, Judge.

{1} Defendant Lawrence Caldwell challenges his convictions for forgery (issuing or transferring), in violation of NMSA 1978, § 30–16–10(B) (1963) (amended 2006), and fraud over $250, contrary to NMSA 1978, § 30–16–6 (1987) (amended 2006). On appeal, Defendant claims that his convictions were (1) based on insufficient evidence, (2) violative of Defendant's protection against double jeopardy, and (3) based on improper jury instructions. We affirm Defendant's convictions.

## BACKGROUND

{2} In January 2004, Benjamin Nieves reported the theft of approximately twenty checks associated with an account he held at Citizen's Bank for his company, New Mexico Roofing & Sheet Metal, Air Conditioning and Mechanical. One of the stolen checks, bearing a signature Nieves claimed was not his own, was made out to "Lawrence Caldwell" and was cashed at a Lowe's grocery store in Clovis, New Mexico. According to the notations on the front of the check, the check was payment for "Labor" in the amount of $860.49.

{3} The State filed a criminal complaint against Defendant charging one count of forgery stemming from the conduct identified above. The State later filed an amended complaint adding a second count against Defendant for the crime of fraud over $250. Defendant was convicted on both counts and appealed. We affirm his convictions.

## DISCUSSION

{4} Defendant argues three bases for reversing his convictions for fraud and forgery. First, Defendant requests that his conviction for fraud be vacated because his convictions under both the fraud and forgery statutes, for the single unitary act of cashing a stolen check, violate his protection from double jeopardy. Second, Defendant contends that the non-uniform instruction given to the jury on the charge of forgery was erroneous because it affirmatively instructed the jury that the check was a forged writing and that Defendant knowingly transferred it, thus removing essential elements of the crime of forgery from the jury's consideration. Third, Defendant argues that the State presented insufficient evidence of the essential facts required for the jury to convict Defendant of either fraud or forgery, claiming that the State failed to prove that Defendant endorsed or cashed the check stolen from Nieves. We address each of these issues below.

### I. Double Jeopardy

{5} The New Mexico Constitution protects criminal defendants against double jeopardy for the same offense. N.M. Const. art. II, § 15. "The right to be free from double jeopardy consist[s] of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *State v. Rodriguez,* 2005–NMSC–019, ¶ 6, 138 N.M. 21, 116 P.3d 92 (alteration in original) (internal quotation marks and citation omitted). Defendant contends that his convictions for both fraud and forgery constitute multiple punishment for the same act in violation of the double jeopardy provision of the New Mexico Constitution. Whether Defendant's convictions for both fraud and forgery constitute "multiple punishment for the same offense as barred by the double jeopardy clause is a question of legislative intent, which we review de novo." *State v. Franco,* 2005–NMSC–013, ¶ 5, 137 N.M. 447, 112 P.3d 1104 (internal quotation marks omitted).

## A. Multiple Punishments

■ {6} "We analyze a multiple punishment double jeopardy challenge under *Swafford v. State*, 112 N.M. 3, 810 P.2d 1223 (1991), and its progeny." *State v. Padilla*, 2006–NMCA–107, ¶ 26, 140 N.M. 333, 142 P.3d 921, *cert. granted*, 2006–NMCERT–008, 140 N.M. 424, 143 P.3d 186. "Specifically, where a person is charged with violations of multiple statutes for the same conduct, we analyze the challenge as a so-called double-description issue." *Id.* "In a double-description case, double jeopardy bars a conviction if the conduct underlying the two offenses is unitary and the legislature has not indicated an intent to punish the same conduct separately." *Id.*

### 1. Unitary Conduct

■ {7} We begin our analysis by determining whether Defendant's conduct may reasonably be viewed as one distinct act or transaction. *See id.* ¶ 27. In making this determination, we evaluate "separations in time or space, the similarity of the acts, their sequence, intervening events, and [D]efendant's goals and mental state in the context of each act." *Id.; see also Swafford*, 112 N.M. at 14, 810 P.2d at 1234 (noting that conduct may be distinguished by looking at "[t]ime and space considerations," "the quality and nature of the acts," or "the objects and results involved"). If sufficient indicia of distinctness exist and a defendant's behavior may be viewed as two distinct acts, the inquiry ends because double jeopardy does not bar multiple convictions when the conduct is non-unitary. *See id.* (stating that a double jeopardy multiple punishment inquiry ends when conduct is "separate and distinct").

{8} In the present case, the State appears to concede that Defendant's conduct was unitary, focusing its argument solely on the legislative-intent prong of the double description analysis. This Court, however, is not bound by the State's concession and we conduct our own analysis as to whether Defendant's conduct was unitary. *See State v. Montoya*, 116 N.M. 297, 307, 861 P.2d 978, 988 (Ct.App.1993) (noting that the Court is not bound by the State's concession that double jeopardy had been violated), *holding*

*modified on other grounds by State v. Gomez*, 1997–NMSC–006, 122 N.M. 777, 932 P.2d 1; *State v. Maes*, 100 N.M. 78, 80, 665 P.2d 1169, 1171 (Ct.App.1983) ("The public interest in criminal appeals does not permit their disposition by party stipulation."), *abrogated on other grounds by State v. Fuentes*, 119 N.M. 104, 106, 888 P.2d 986, 988 (Ct.App. 1994). We conclude that Defendant's conduct was unitary.

{9} Defendant's fraud and forgery convictions are based on a discrete act, not separated by time or space, and not distinguishable based on the nature, quality, or result of the act, or Defendant's objective in performing the act. The conduct in question, the act of presenting the check to Lowe's to be cashed and carrying away the proceeds of the check-cashing, provides no basis for determining that Defendant's conduct was not unitary. *See State v. Davis*, 2000–NMCA–105, ¶ 6, 129 N.M. 773, 14 P.3d 38 (determining that rigging a five-dollar bill to trigger a change machine to release all its coins and carrying those coins away was unitary conduct, as it was close in time and space and the purpose of both acts was the same). When it can reasonably be said that the conduct at issue is unitary, we turn to the second prong of our double-description analysis. *Swafford*, 112 N.M. at 14, 810 P.2d at 1234.

### 2. Legislative Intent

■ {10} The second prong of our inquiry under a double-description analysis is to determine if the legislature intended for the unitary conduct in question to be punished as separate offenses. The "sole limitation on multiple punishments is legislative intent." *Id.* at 13, 810 P.2d at 1233; *see State v. Edwards*, 102 N.M. 413, 416, 696 P.2d 1006, 1009 (Ct.App.1984) ("Few, if any, limitations are imposed by the Double Jeopardy Clause on the legislative power to define offenses."). "If the legislature expressly provides for multiple punishments, the double jeopardy inquiry must cease." *Swafford*, 112 N.M. at 14, 810 P.2d at 1234.

Absent a clear expression of legislative intent, a court first must apply the *Blockburger* test to the elements of each statute. If that test establishes that one statute is

subsumed within the other, the inquiry is over and the statutes are the same for double jeopardy purposes—punishment cannot be had for both.

*Id.*

{11} In applying the *Blockburger* test, if we conclude that each statute requires proof of an element that the other does not, then a presumption arises that our legislature intended for the conduct to result in separately punishable offenses. *See id.* at 9, 14, 810 P.2d at 1229, 1234. This presumption, however, is not conclusive and may be overcome by other indicia of legislative intent. *See id.* at 14, 810 P.2d at 1234 (indicating that the presumption can be rebutted by looking at the "language, history and subject of the statutes"). As there are no clear legislative expressions whether or not to impose multiple punishments in either the fraud or forgery statute, we turn to the *Blockburger* elements test.

### a. Applying *Blockburger*

{12} The *Blockburger* test "focuses strictly upon the elements of the statutes." *State v. Armendariz*, 2006–NMSC–036, ¶ 21, 140 N.M. 182, 141 P.3d 526. Section 30–16–6 (1987), current version at Section 30–16–6(A), defines fraud as the "intentional misappropriation or taking of anything of value which belongs to another by means of fraudulent conduct, practices or representations." This statute requires the State to prove:

> (1) that [the] defendant, by words or conduct, misrepresented a fact to the victim, intending to deceive or cheat the victim; (2) because of the misrepresentation and the victim's reliance on it, defendant obtained money or property; (3) the property belonged to someone other than [the] defendant; and (4) the property had a market value as specified.

*State v. Higgins*, 107 N.M. 617, 621, 762 P.2d 904, 908 (Ct.App.1988).

1. Under the 2006 amended version of Section 30–16–10, Subsection (B) was recodified as Subsection (A)(2).

2. The amended version of the forgery statute, effective July 1, 2006, makes the degree of felony dependent on the quantifiable amount of damage inflicted. *See* § 30–16–10(B)–(E). This adds an

{13} The applicable version of the forgery statute provides for alternate means of prosecuting forgery based on:

> A. falsely making or altering any signature to, or any part of, any writing purporting to have any legal efficacy ...; or
>
> B. knowingly issuing or transferring a forged writing[.]

§ 30–16–10 (1963); *see also State v. Orgain*, 115 N.M. 123, 125, 847 P.2d 1377, 1379 (Ct. App.1993) ("The different subsections of the forgery statute, which are stated in the alternative, provide for alternative means of prosecution."). "When applying the *Blockburger* test to ... offenses that may be charged in alternate ways, we look only to the elements of the statute[ ] as charged to the jury and disregard the inapplicable statutory elements." *State v. Armijo*, 2005–NMCA–010, ¶ 22, 136 N.M. 723, 104 P.3d 1114.

{14} In this case, Defendant was charged with a violation of Subsection (B) of the forgery statute—issuing or transferring.[1] Accordingly, we compare the elements of the fraud statute set forth above with the elements of Subsection (B) of the 1963 version of the forgery statute. Subsection (B) required the State to prove: (1) that Defendant gave or delivered to the victim a false writing, (2) that Defendant knew the writing was false, and (3) that Defendant intended to cheat or deceive the victim. *See* UJI 14–1644 NMRA; § 30–16–10(B) (1963).

{15} In comparing the two statutes, we look to see if each statutory offense requires proof of an element that the other does not. *See Franco*, 2005–NMSC–013, ¶ 12, 137 N.M. 447, 112 P.3d 1104; *Swafford*, 112 N.M. at 9, 810 P.2d at 1229. In the present case, each statute contains elements that are not included in the other statute. Specifically, the forgery statute does not require proof of a misappropriation or proof of the value of the misappropriation,[2] two elements required by

element similar to the fraud statute's requirement for proof of the value of misappropriation. The amended version of the statute does not apply because Defendant was tried and sentenced prior to July 1, 2006.

the fraud statute. Likewise, the forgery statute requires a writing of purported legal efficacy, which the fraud statute does not. Thus, our application of the *Blockburger* test results in a presumption that the legislature intended for both the fraud and forgery statutes to apply to the same course of conduct. *See State v. Ross,* 104 N.M. 23, 26–27, 715 P.2d 471, 474–75 (Ct.App.1986) (holding a presumption under *Blockburger* that the fraud and securities fraud statutes did not constitute the same offense since the fraud statute required a misappropriation and proof of value while the securities fraud statute did not, and the securities fraud statute required proof that a security was involved, while the fraud statute did not).

### b. Rebutting the *Blockburger* Presumption

■ {16} *Blockburger,* however, does not mark the end of our inquiry. As noted above, the presumption that arises upon finding that each statute possesses different elements can be rebutted by other indicia of legislative intent demonstrating that the legislature did not intend for the same course of conduct to be punished under both statutes. *See Swafford,* 112 N.M. at 14, 810 P.2d at 1234. "Legislative intent may be gleaned from the statutory schemes by identifying the particular evil addressed by each statute; determining whether the statutes are usually violated together; comparing the amount of punishment inflicted for a violation of each statute; and examining other relevant factors." *State v. Gonzales,* 113 N.M. 221, 225, 824 P.2d 1023, 1027 (1992).

{17} Turning to other indicia of legislative intent, we note that our courts have attributed different social purposes to the proscriptions against fraud and forgery. This Court has previously remarked that the fraud statute "is designed to protect persons and companies from being defrauded of valuable property by the misrepresentations of others." *Higgins,* 107 N.M. at 621, 762 P.2d at 908. Our Supreme Court has identified forgery as "a crime aimed primarily at safeguarding confidence in the genuineness of documents relied upon in commercial and business activity." *State v. Baca,* 1997–

NMSC–018, ¶ 5, 123 N.M. 124, 934 P.2d 1053. Although similar, the social harms addressed by the fraud and forgery statutes must be construed narrowly. *Swafford,* 112 N.M. at 14–15, 810 P.2d at 1234–35. When statutes protect different social norms, as arguably the fraud and forgery statutes do, they may be construed as amenable to multiple punishments. *Id.* at 14, 810 P.2d at 1234.

{18} It also appears that, applying a common sense approach, the fraud and forgery statutes would often be violated together. Both fraud and forgery require a misrepresentation and the intent to defraud. *See* UJI 14–1640 NMRA; UJI 14–1644. Although the fraud statute encompasses misrepresentations beyond those intended by the forgery statute, the similarity between the statutes suggests that when a violation of the fraud statute is based on a writing purporting to have legal efficacy, there will be a violation of the forgery statute as well. However, this does not indicate a legislative intent against multiple punishment because "[t]he fact that each statute may be violated independent of the other ... lend[s] support to the imposition of sentences for each offense." *State v. Sosa,* 1997–NMSC–032, ¶ 36, 123 N.M. 564, 943 P.2d 1017.

{19} Finally, the quantum of punishment ascribed to each offense is also probative of legislative intent. *See Swafford,* 112 N.M. at 15, 810 P.2d at 1235. According to the applicable version of the statute, fraud over $250 but less than $2,500 was a fourth degree felony, § 30–16–6 (1987), punishable by up to eighteen months' incarceration, NMSA 1978, § 31–18–15(A)(6) (1999) (amended 2007) (current version at § 30–18–15(A)(10)), and forgery prior to the 2006 amendment was a third degree felony, § 30–16–10 (1963), punishable by a maximum of three years, NMSA 1978, § 31–18–15(A)(5) (1999) (current version at § 31–18–15(A)(9)). The fact that punishment for forgery is two times the punishment for fraud over $250 but not more than $2,500 is one point in favor of Defendant's position, but it is not alone persuasive. *See Fuentes,* 119 N.M. at 109, 888 P.2d at 991 ("The fact that punishment for armed robbery is three times the punishment for aggravated battery is one point in favor of the

[d]efendant's position, but it is not alone persuasive."). While *Swafford* provided that different degrees of punishment may indicate a legislative intent against separate punishments, this Court and our Supreme Court have previously noted that a difference in the quantum of punishment alone is insufficient to overcome other indicia of legislative intent. *See Armendariz*, 2006–NMSC–036, ¶ 25, 140 N.M. 182, 141 P.3d 526; *see also State v. Cowden*, 1996–NMCA–051, ¶ 13, 121 N.M. 703, 917 P.2d 972 (stating that quantum of punishment alone is not determinative or accorded much weight). Therefore, applying the above canons of statutory construction to the fraud and forgery statutes, we conclude that separate punishment is consistent with the legislature's intent and does not constitute double jeopardy.

{20} Defendant's reliance on *Montoya*, 116 N.M. at 307, 861 P.2d at 988, fails to persuade us otherwise. According to Defendant, *Montoya* stands for the proposition that where a false writing is used to perpetrate a fraud, the legislature intended only one punishment. In *Montoya*, this Court agreed with the State's concession that double jeopardy was violated by the defendant's convictions for fraud and using a false writing to obtain credit union funds, but we did so without discussion. *Id.* Because *Montoya* does not compare the two statutes at issue in this case and provides no discussion regarding its determination that a double jeopardy violation existed, it provides little, if any, guidance for the statute-specific analysis at hand. *See id.* Based on our review of the elements of the fraud and forgery statutes and various indicia of the legislature's intent, we hold that Defendant's convictions under both the fraud and forgery statutes do not violate his protection against double jeopardy.

## II. Jury Instructions

{21} Defendant contends that the trial court erred by improperly instructing the jury with respect to the forgery charge and asks this Court to reverse his conviction for forgery and remand the matter for a new trial. According to Defendant, the trial court delivered an instruction that deviated from the uniform jury instruction on forgery, UJI 14–1644, and affirmatively instructed the jury that the check was a forged writing, thereby removing an essential element from the jury's consideration. The State, however, contends that the instruction given to the jury tracks the language contained in the statute and includes each of the statutory elements of forgery.

## A. Standard of Review

{22} "The standard of review we apply to jury instructions depends on whether the issue has been preserved. If the error has been preserved we review the instructions for reversible error. If not, we review for fundamental error." *State v. Benally*, 2001–NMSC–033, ¶ 12, 131 N.M. 258, 34 P.3d 1134. Defendant concedes that he did not object to the jury instruction on forgery at trial. Thus, we review for fundamental error. Fundamental error only exists "if there has been a miscarriage of justice, if the question of guilt is so doubtful that it would shock the conscience to permit the conviction to stand, or if substantial justice has not been done." *State v. Sutphin*, 2007–NMSC–045, ¶ 16, 142 N.M. 191, 164 P.3d 72 (internal quotation marks and citation omitted); *see also State v. Barber*, 2004–NMSC–019, ¶ 17, 135 N.M. 621, 92 P.3d 633 (explaining that fundamental error includes both "cases with defendants who are indisputably innocent, and cases in which a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused"). With this standard in mind, we inquire "whether the instruction or instructions would confuse or misdirect a reasonable juror due to contradiction, ambiguity, omission, or misstatement." *State v. Gee*, 2004–NMCA–042, ¶ 8, 135 N.M. 408, 89 P.3d 80.

## B. Fundamental Error

{23} Our Supreme Court promulgated a uniform jury instruction that states the essential elements of the crime of forgery as defined by Section 30–16–10(B) (1963). The uniform jury instruction provides:

> For you to find the defendant guilty of forgery [as charged in Count ——], the state must prove to your satisfaction be-

**800**

yond a reasonable doubt each of the following elements of the crime:

    1.  The defendant gave or delivered to —— (name of victim) a —— (name of writing) knowing it to [be a false ——] [have a false signature] [have a false endorsement] [have been changed so that its effect was different from the original or genuine] intending to injure, deceive or cheat —— (name of victim) or another;

    2.  This happened in New Mexico on or about the —— day of ——, ——.

UJI 14–1644 (emphasis and Use Notes omitted). The trial court did not instruct the jury in accordance with UJI 14–1644, but instead gave the following jury instruction submitted by the State:

    For you to find [D]efendant guilty of forgery as charged in Count 1, the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

    1.  [D]efendant knowingly issued or transferred a forged writing with intent to injure or defraud Lowe's, or Citizen's Bank, or Benjamin E. Nieves, or another;

    2.  This happened in New Mexico on or about the 18th day of January, 2004.

**■** {24} When a uniform jury instruction exists, that instruction must be used without substantive modification. *See State v. Ellis,* 2007–NMCA–037, ¶ 10, 141 N.M. 370, 155 P.3d 775 ("District courts must give uniform jury instructions as written."), *cert. granted,* 2007–NMCERT–003, 141 N.M. 402, 156 P.3d 40. Failure to use a uniform jury instruction, however, does not necessarily rise to the level of fundamental error. *See Jackson v. State,* 100 N.M. 487, 489, 672 P.2d 660, 662 (1983) ("[T]here may be fundamental error if the instruction given differs materially from the required instruction."). Instead, "[a] jury instruction is proper, and nothing more is required, if it fairly and accurately presents the law." *State v. Laney,* 2003–NMCA–144, ¶ 38, 134 N.M. 648, 81 P.3d 591. For fundamental error to exist, the instruction given must differ materially from the uniform jury instruction, *Jackson,* 100 N.M. at 489, 672 P.2d at 662, omit essential elements, *Barber,* 2004–NMSC–019, ¶ 20, 135 N.M. 621, 92 P.3d 633, or be "so confusing

and incomprehensible that a court cannot be certain that the jury found the essential elements under the facts of the case." *State v. Wilson,* 116 N.M. 793, 799–800, 867 P.2d 1175, 1181–82 (1994).

**■** {25} Comparing the instruction given in this case with the uniform jury instruction promulgated by our Supreme Court, we fail to see any material difference, missing elements, or language lending itself to juror confusion that would rise to the level of fundamental error. The instruction that was given accurately tracks the language of the forgery statute. Jury instructions that "substantially follow the language of the statute or use equivalent language" do not constitute fundamental error. *See State v. Doe,* 100 N.M. 481, 483, 672 P.2d 654, 656 (1983). Given that the jury instruction tracks the language of the statute, includes all the elements contained in the forgery statute, and does not differ from the uniform jury instruction in any material way, this Court sees no basis for holding that fundamental error exists. ·

{26} Defendant relies on *State v. Bonham,* 1998–NMCA–178, 126 N.M. 382, 970 P.2d 154, *abrogated by State v. Traeger,* 2001–NMSC–022, ¶¶ 1, 20, 130 N.M. 618, 29 P.3d 518, and *State v. Montano,* 1999–NMCA–023, 126 N.M. 609, 973 P.2d 861, to argue that the instruction given in this case rises to the level of fundamental error because it "affirmatively instructed the jury that the check was a forged writing and that [D]efendant knowingly transferred it." This argument, however, is without merit. In both *Bonham* and *Montano,* the jury instruction included an appositive phrase that defined the weapon used in the commission of the crime as a deadly weapon. This Court held that, "[g]iven the grammatical structure of th[e] instruction, the jury would not have understood that it was required to decide whether … [the] object … could [have] cause[d] death or very serious injury." *Bonham,* 1998–NMCA–178, ¶ 28, 126 N.M. 382, 970 P.2d 154; *see Montano,* 1999–NMCA–023, ¶ 16, 126 N.M. 609, 973 P.2d 861 ("The phrasing of the district court's instruction could lead the jury to conclude that rather than having

within its province the decision of whether the brick wall was a deadly weapon, the court instructed it that it was indeed a deadly weapon."). In this case, the prefatory portion of the instruction makes it clear that the State bore the burden of proving that the check was a forged writing, that Defendant transferred the check, and that Defendant knew the check was forged. The instruction given was not so confusing or incomprehensible that the jury would have been misdirected to believe that it was not required to find that the State had satisfied each of these elements. We hold that there is no fundamental error.

### III. Sufficiency of Evidence

{27} Defendant claims there was insufficient evidence to allow a reasonable jury to conclude that the State had proved the essential facts required for a fraud or forgery conviction beyond a reasonable doubt. Specifically, Defendant asserts that the State failed to establish that it was Defendant who presented the check for cashing or that Defendant had any knowledge that the check was not authentic.

### A. Standard of Review

{28} When a claim of insufficient evidence is made, this Court views the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all permissible inferences to uphold the conviction, and disregarding all evidence and inferences to the contrary. *State v. Rojo,* 1999–NMSC–001, ¶ 19, 126 N.M. 438, 971 P.2d 829. We then determine "whether the evidence, viewed in this manner, could justify a finding by any rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt." *State v. Sanders,* 117 N.M. 452, 456, 872 P.2d 870, 874 (1994). In conducting our analysis, we do not weigh the evidence or substitute our judgment for that of the fact finder as long as there is sufficient evidence to support the verdict. *State v. Mora,* 1997–NMSC–060, ¶ 27, 124 N.M. 346, 950 P.2d 789. Instead, we examine the record for "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*State v. Salgado,* 1999–NMSC–008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted).

### B. Defendant's Forgery Conviction

{29} A substantial evidence review requires an analysis of both direct and circumstantial evidence and a determination whether the evidence supports "a verdict of guilt beyond a reasonable doubt with respect to every element essential for conviction." *State v. Kent,* 2006–NMCA–134, ¶ 10, 140 N.M. 606, 145 P.3d 86. To determine whether substantial evidence exists, we measure the evidence against the instructions submitted to the jury. *State v. Smith,* 104 N.M. 729, 730, 726 P.2d 883, 884 (Ct.App.1986) ("Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured.").

{30} With respect to the crime of forgery, the jury was instructed that, in order to find Defendant guilty, the State was required to prove "[D]efendant knowingly issued or transferred a forged writing with intent to injure or defraud Lowe's, or Citizen's Bank, or Benjamin E. Nieves, or another," and the event occurred on or about January 18, 2004. There must be substantial evidence that Defendant was the person who issued or transferred the check to Lowe's, that the check was forged, that Defendant knew the check was forged, and that Defendant intended to injure or defraud Lowe's, Citizen's Bank, Nieves, or another. *See State v. Sarracino,* 1998–NMSC–022, ¶ 15, 125 N.M. 511, 964 P.2d 72 (stating that due process requires the State to "produce sufficient evidence to prove every element essential for conviction beyond a reasonable doubt").

{31} Regarding the evidence introduced at trial on the check's authenticity, the State presented the testimony of Nieves, in which Nieves stated that he had not written the check made out to Defendant in exchange for labor; he did not use the account the check was drawn from to pay for business expenditures, including labor; he had never employed Defendant; and the signature on the check was not his. An employee of Citizen's Bank confirmed that the signature on the

check was not consistent with how Nieves signed his name and testified that there had been unusual activity on the account during January 2004. Based on this evidence, the jury could have reasonably concluded that Nieves had not written the check and that the check was a forgery. *See Dull v. Tellez,* 83 N.M. 126, 128, 489 P.2d 406, 408 (Ct.App. 1971) (defining a reasonable inference as "a rational and logical deduction from facts admitted or established by the evidence, when such facts are viewed in light of common knowledge or common experience").

{32} The jury could have also reasonably inferred that Defendant was the person who transferred the forged check to Lowe's. According to the testimony elicited at trial, there were notations on the front of the check indicating that the person cashing the check had presented identification with a driver's license number and date of birth matching that of Defendant. The State also presented testimony that the investigator had been informed by Lowe's management that it was their policy to require identification prior to cashing a check and that the investigator had observed personnel at Lowe's demand and examine identification before cashing a check on other occasions. The investigator testified that the endorsement on the back of the check read "Lawrence Caldwell" and resembled an exemplar of Defendant's signature. When combined with testimony that businesses generally require identification prior to cashing a check, the jury could have reasonably inferred that the person who presented the check to Lowe's was Defendant.

■ {33} It was also reasonable for the jury to conclude that Defendant possessed knowledge that the check was not authentic. "Guilty knowledge is rarely susceptible of direct and positive proof and generally can be established only through circumstantial evidence." *State v. Zarafonetis,* 81 N.M. 674, 675, 472 P.2d 388, 389 (Ct.App.1970). Here, the jury was presented with evidence that the check was made out to Defendant, that it was drawn from an account for New Mexico Roofing & Sheet Metal, and it was made out in payment for labor. The jury was also presented with evidence that Nieves

did not recall ever employing anyone with Defendant's name. In *Baca,* 1997–NMSC–018, ¶ 16, 123 N.M. 124, 934 P.2d 1053, our Supreme Court determined that the jury was entitled to reason that the defendant knew the checks he transferred were not validly issued for wages because he had never worked for the company. Similarly, it was reasonable for the jury to infer that Defendant had knowledge that the check was not authentic because it was made out for labor and Defendant had not been employed by New Mexico Roofing & Sheet Metal.

■ {34} Finally, we turn to the issue of intent. Like knowledge, a defendant's intent is rarely subject to direct proof and may be proved by circumstantial evidence. *State v. Wasson,* 1998–NMCA–087, ¶ 12, 125 N.M. 656, 964 P.2d 820. Intent to defraud "is a natural inference from the doing of the act; and unless the defendant's explanation of the act is sufficient to raise a reasonable doubt as to the correctness of such natural inference, a conviction is proper under the law." *State v. Smith,* 32 N.M. 191, 206, 252 P. 1003, 1009 (1927). Here, there was evidence presented that Defendant was aware that the check was not authentic, since Defendant had never been employed by New Mexico Roofing & Sheet Metal and the check was ostensibly payment for labor, and that Defendant was the person who had transferred the check to Lowe's. Based on this evidence, it would have been reasonable for the jury to infer that Defendant possessed the requisite intent to injure or defraud and Defendant did not present any evidence to counter this inference. Consequently, we hold that there was sufficient evidence to support Defendant's forgery conviction.

### C. Defendant's Fraud Conviction

■ {35} Defendant also challenges the sufficiency of the evidence supporting his fraud conviction. Pursuant to the instruction provided to the jury, the State was required to prove (1) a misrepresentation of fact by word or conduct, (2) intent to deceive or cheat, and (3) due to the misrepresentation Defendant obtained anything of value worth more than $250 belonging to someone else.

{36} Based on our review of the evidence, we conclude that there was sufficient evidence to support Defendant's conviction for fraud. There was substantial evidence presented that Defendant had misrepresented a fact by words or conduct. We have already determined in our discussion of the sufficiency of the evidence for forgery that it was reasonable for the jury to infer that Defendant presented the check for cashing. Evidence that Defendant presented the check for cashing as though it was authentic when it was not may constitute a misrepresentation. *Cf. Higgins,* 107 N.M. at 621, 762 P.2d at 908 (indicating that cashing a check with knowledge that there are not sufficient funds to cover the check constituted a misrepresentation for purposes of the fraud statute). Our forgery discussion above also establishes that there was sufficient evidence for the jury to conclude that Defendant had the requisite intent under both the fraud and forgery statutes. *See State v. Griscom,* 101 N.M. 377, 379, 683 P.2d 59, 61 (Ct.App.1984) (providing that the intent to defraud element of the fraud statute may be based on circumstantial evidence).

{37} With respect to the other elements of fraud, there was substantial evidence to support the jury's determination that Defendant's misrepresentation was relied on and that Defendant had obtained property belonging to someone else with a value over $250. Specifically, the evidence presented at trial established that a cashier at Lowe's had exchanged the check for cash, that the check was written for an amount in excess of $250, and that the money did not belong to Defendant since it was drawn on Nieves's account and Nieves testified that he had not employed Defendant or written a check to him in payment for labor. We therefore conclude that, viewed in the light most favorable to the verdict, there was substantial evidence on all the elements of fraud, sufficient to support Defendant's conviction.

## CONCLUSION

{38} We hold that Defendant's convictions for fraud and forgery do not violate double jeopardy. We also conclude that there was sufficient evidence to support Defendant's convictions and that no fundamental error

occurred based on the forgery instruction tendered to the jury. We therefore affirm Defendant's convictions.

{39} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN, Chief Judge, and RODERICK T. KENNEDY, Judge.