This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                          **No.  34,537**

**NATHANIEL YAZZIE,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Karen L. Townsend, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Steven H. Johnston, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**ZAMORA, Judge.**

{1}    Defendant Nathaniel Yazzie entered into a conditional plea agreement, pleading no contest to an attempt to commit a felony, to wit: child abuse—negligently permit (no death or great bodily harm), contrary to NMSA 1978, Section 30-6-1(D) (2009), a lesser-included offense of Count 1 in the criminal complaint (abuse of a child). The conditional plea included the specific reservation of the right to appeal the denial of Defendant's motion to suppress evidence obtained during the warrantless entry of his home.

{2}    On appeal to this Court, Defendant raises two issues: (1) whether the district court erred in denying his motion to suppress evidence obtained, pursuant to the officer's warrantless entry into his residence; and (2) whether the offense to which Defendant pled was nonexistent rendering the plea agreement invalid. We reverse the order denying Defendant's motion to suppress evidence, and as a result, we need not address Defendant's plea agreement issue.

**I.    BACKGROUND**

{3}    On December 5, 2013, at 9:43 p.m., Officer William Temples was dispatched to Defendant's apartment in response to a call to law enforcement regarding a "loud thumping" coming from the apartment. Officer Temples testified that, when he arrived at the apartment, he knocked and announced himself several times but there was no response. The officer stated that he heard the door knob rattle as if someone could not

2

get the door open, he heard sounds of movement, and he heard a child calling "mommy, mommy wake up." After the third or fourth time that Officer Temples banged on the door, a baby started to cry and the cry became a constant cry, as if there was no one caring for the child.

{4}     Officer Temples reported that he had been knocking for eight to ten minutes, and when he received no answer, he became concerned that something might be wrong, including the possibility that someone was hurt or the child had been left alone. When asked if he thought the occupants might not have wanted to open the door, his response was that when a person has nothing to hide that person would generally open the door. Officer Temples stated that he believed that someone inside might have a medical issue when he heard the child calling for "mommy" to wake up. He became suspicious that there was something wrong because that type of behavior would usually result in "mommy" waking up.

{5}     Officer Temples then opened the door to check on the welfare of the occupants. He saw two adults lying on the floor, two small children around the ages of two and five, and an infant lying on the couch. At some point, Officer Temples called for a backup unit and for a portable breath tester. The statement of probable cause indicates that the officer performed a safety sweep of the apartment before contacting the dispatcher, but Officer Temples testified that he waited for backup before "full entry"

3

for purposes of officer safety and to make sure no one else was hurt. The portable breath tester revealed Defendant's intoxication level of .286 breath alcohol content. Defendant was arrested and charged with an abuse of a child (2nd offense).

{6}     Defendant filed a motion to suppress all evidence obtained as a result of the entry and "safety sweep" of his apartment. In response to the motion, the State argued that Officer Temples had reasonable grounds to enter the apartment under the emergency assistance doctrine. Following a hearing on the motion, the district court denied the suppression motion and entered a letter decision to that effect. The district court found that the entry was appropriate under either the community caretaker doctrine or the emergency assistance doctrine based on what the officer was told, heard, and observed while at the apartment, and based on the test outlined in *State v. Ryon*, 2005-NMSC-005, 137 N.M. 174, 108 P.3d 1032.

## II.     DISCUSSION

### A.     Suppression Motion

{7}     Our review of a district court's decision concerning suppression of evidence "based on the legality of a search [is] a mixed question of fact and law." *Id.* ¶ 11. We view the facts in the light most favorable to the state, and we defer to the lower court's findings of fact and determinations of witness credibility where supported by

substantial evidence. *See id.* Our review of the reasonableness of the search is de novo. *Id.*

{8} Although we are not bound by the State's concession, *see State v. Caldwell*, 2008-NMCA-049, ¶ 8, 143 N.M. 792, 182 P.3d 775, we agree that the community caretaker doctrine is not applicable in this case. *See Ryon*, 2005-NMSC-005, ¶ 21. In *Ryon*, our Supreme Court explained that the community caretaker doctrine is primarily applied to situations involving warrantless searches and seizures of automobiles, which have a lesser expectation of privacy while the emergency assistance doctrine generally applies to warrantless searches and seizures of personal residences and is permitted only when there is a "genuine emergency." *Id.* ¶ 26. The Court stressed that warrantless searches and seizures are presumptively unreasonable and are not justified except in a few specific, narrowly defined situations. *Id.* ¶ 23. Based on *Ryon*, the warrantless entry of a home, pursuant to the emergency assistance doctrine is justified if the following three factors are met: (1) law enforcement officers must have credible and specific information that there is an emergency at hand and that there is an immediate need for assistance for the protection of life or property; (2) the officers' primary motivation for the search must be a strong sense of emergency, and must not be the intent to arrest a suspect or to seize evidence; and (3) the officers must have some reasonable basis approximating probable cause to connect the emergency to the

area to be searched. *Id.* ¶¶ 39, 42. The *Ryon* Court noted that other factors should be considered when applying this test, including "the purpose and nature of the dispatch, the exigency of the situation based on the known facts, and the availability, feasibility and effectiveness of alternatives to the type of intrusion actually accomplished." *Id.* ¶ 32 (internal quotation marks and citation omitted).

{9} In *State v. Baca*, 2007-NMCA-016, 141 N.M. 65, 150 P.3d 1015, this Court specifically noted the *Ryon* Court's emphasis on the first factor.

> The emphasis throughout *Ryon* on a 'strong sense of an emergency,' a 'genuine emergency,' a 'strong perception that action is required to protect against imminent danger to life or limb,' a 'sufficiently compelling' emergency, and 'compelling and immediate need for police to take swift action to prevent imminent danger to life or serious injury,' is consistent with the fundamental principle that a warrantless entry into a home is an exception and allowed only when justified by exigent circumstances. Since the privacy expectation is strongest in the home, only a genuine emergency will justify entering and searching a home without a warrant and without consent or knowledge.

*Baca*, 2007-NMCA-016, ¶ 20 (alteration, internal quotation marks, and citations omitted) (quoting *Ryon*, 2005-NMSC-005, ¶¶ 23, 26 & n.4, 27, 29, 31).

{10} According to the State, the information known to Officer Temples was sufficient to indicate that there was an "emergency inside the apartment." The officer was dispatched in response to a loud noise complaint, he described the purpose of the dispatch as a welfare check, he knocked and announced himself as a police officer over the course of several minutes without receiving a response, he saw the door knob

6

rattle as if someone was trying to open the door, he heard a baby crying, and he heard a child cry out for its mother. The officer conceded that it is possible that the baby was awakened and started crying because of the knocking.

{11} Our review of the video from Officer Temples' lapel camera provides additional information. *See State v. Martinez*, 2015-NMCA-051, ¶ 15, 348 P.3d 1022 (determining that an appellate court's review of a video is similar to reviewing any other documentary evidence, and the appellate court is in as good a position as the trial court to interpret the contents of the video). When the officer approached the residence, there was no sound coming from inside, it was dark outside, and there were no lights on in the residence. Officer Temples knocked on the door a few seconds after he arrived. Several seconds later there were signs of movement in the apartment, there were brief cries from a baby, and intermittent sounds from a child interspersed with periods of silence. After knocking five times, Officer Temples said, "mom and dad are obviously passed out." A few minutes later, after knocking and announcing himself again it appears that the officer opens the door and then requests a second unit and a portable breath tester. Officer Temples testified that he decided to wait until a backup unit was close before fully entering the apartment to make sure no one else was hurt or injured and for officer safety. Based on contents of the video, Officer Temples

appears to wait about forty-five seconds before he has fully entered and is walking through the apartment.

{12}     Based on the facts known to Officer Temples at the time of entry, as well as the additional information from the video, we hold that the first factor of the *Ryon* test, demonstration of a high level of emergency was not satisfied. The information available to Officer Temples prior to entry included a dispatch at 9:43 p.m. to a residence for a noise complaint, there were no loud noises or screams coming from the residence, no response to his repeated knocks over the course of approximately eight minutes, intermittent and briefly heard sounds coming from a baby and a child, the rattling of a door knob, the crying of a baby that became more intense as the officer knocked and announced his presence, and a child saying, "mommy, mommy, wake up." These facts do not constitute credible and specific information that would have led the officer to believe there was a compelling or genuine emergency necessitating him to take swift action to prevent imminent danger to life or serious injury. The officer went to the residence to investigate a noise complaint. Once there, any additional information gathered by the officer during the eight to nine minutes before he entered the residence would not suggest a need to provide protection from imminent danger to any of the occupants of the apartment.

{13} Based on the officer's comment that "mom and dad are obviously passed out," and the fact that he requested a portable breath tester, it appears that he was genuinely concerned about the welfare of the children. However, as discussed in *Ryon*, officers performing a welfare check or actions consistent with public service may fit under the broader community caretaker doctrine, but the test for the emergency assistance doctrine is more narrow and much more strict. 2005-NMSC-005, ¶¶ 21-22. Officer Temples' warrantless entry into the apartment was not justified under the emergency assistance doctrine, and the evidence obtained as a result should have been suppressed. Consequently, we reverse the district court's order denying Defendant's motion to suppress the evidence obtained as a result of the illegal entry.

{14} We recognize that law enforcement officers are, at times, faced with situations where they have to weigh competing considerations such as the safety of community members and the constitutional protections afforded citizens, sometimes in short periods of time. We do not criticize Officer Temples for his decision to enter the home in order to ensure that the children he heard inside the apartment were safe. However, the strict requirements of the *Ryon* test and the constitutional protections afforded to entering and searching a home without consent or knowledge, preclude admission of evidence obtained by entry of the residence in this case.

**B.    Plea Agreement**

9

{15} Defendant claims that his no contest plea is invalid because the charge to which he pled is nonexistent. In his conditional plea agreement, Defendant reserved the right to appeal the conviction that resulted from his plea, and included a statement that, "[D]efendant may appeal the denial of his motion to suppress and if successful on appeal, may withdraw his guilty plea." Based on our decision reversing the order denying Defendant's suppression motion, Defendant is entitled to withdraw his plea. Therefore, it is not necessary for this Court to address Defendant's plea agreement argument.

## III. CONCLUSION

{16} For the foregoing reasons, we reverse the order denying Defendant's motion to suppress evidence, and we remand to the district court where Defendant shall be allowed to withdraw his plea.

{17} **IT IS SO ORDERED.**

_____
**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____

10

**TIMOTHY L. GARCIA, Judge**