This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                       NO. A-1-CA-35716

**ISMAEL HERNANDEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Lisa B. Riley, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John Kloss, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**VANZI, Chief Judge.**

**{1}** Defendant Ismael Hernandez was convicted of aggravated assault with a deadly weapon against a household member, pursuant to NMSA 1978, Section 30-3-13(A)(1) (1995), and aggravated battery with a deadly weapon against a household member, pursuant to NMSA 1978, Section 30-3-16(C)(2) (2008, amended 2018). Defendant challenges his convictions on two grounds. First, he argues that the jury was improperly instructed on the deadly weapon element of both aggravated assault and aggravated battery. Second, he contends that there was not sufficient evidence for either of his convictions. We affirm.

**BACKGROUND**

**{2}** Because this is a memorandum opinion and the parties are familiar with the facts, we set forth only the factual and procedural events that are required to place our analysis in context.

**{3}** At Defendant's trial, Lolita Chavez testified that she and Defendant had been separated for three years but had been in a seventeen-year relationship and shared two children together. On the evening of October 25, 2014, Defendant picked Chavez up so they could spend the night together in Carlsbad, New Mexico with the hope of reconciling. As they drove, Defendant became angry and upset with Chavez. Defendant was drinking beer from a bottle and began to hit Chavez with the bottle, striking her in the arm, back, and head. Defendant also produced a knife of some type and threatened to stab Chavez if she answered her cell phone, which was ringing.

Eventually, Defendant stopped the truck in an isolated area and, while brandishing the knife, told Chavez he could kill and bury her, and no one would find her. Ultimately, Defendant calmed down, and he and Chavez continued to the Cavern Inn where they spent the night together. Chavez reported the incident to the police five days later, on October 30, 2014.

**DISCUSSION**

**I.      Jury Instructions**

**A.      Standard of Review**

{4}      Defendant argues that his convictions must be reversed because the district court did not use the New Mexico Uniform Jury Instructions (UJIs) for either aggravated assault with a deadly weapon against a household member or aggravated battery with a deadly weapon against a household member. Defendant concedes that he did not object to the jury instructions at trial, and therefore, our review is for fundamental error. "The standard of review we apply to jury instructions depends on whether the issue has been preserved. If the error has been preserved we review the instructions for reversible error. If not, we review for fundamental error. Under both standards we seek to determine whether a reasonable juror would have been confused or misdirected by the jury instruction." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (internal quotation marks and citations omitted); *see State v. Sutphin*, 2007-NMSC-045, ¶ 16, 142 N.M. 191, 164 P.3d 72 (stating that

3

"fundamental error does not occur if the jury was not instructed on an element not at issue in the case" or if "there can be no dispute that the omitted element was established"); *see also State v. Samora*, 2016-NMSC-031, ¶ 29, 387 P.3d 230 ("[W]e need not conclude that there was fundamental error despite the court's failure to instruct on an essential element where the jury's findings, in light of the undisputed evidence in the case, necessarily establish that the omitted element was met beyond a reasonable doubt." (alteration, internal quotation marks, and citation omitted)).

**B.      Contents of the Jury Instructions**

{5}      Before turning to our analysis, we first set forth the instructions at issue that were given at trial, as well as the standard UJIs, which were not. The essential difference between the UJIs for aggravated assault with a deadly weapon against a household member and aggravated battery with a deadly weapon against a household member and the jury instructions used here is that the UJIs integrate the definition of a "deadly weapon" into the instruction on elements of the offense, whereas in this case, the district court provided that definition in a separate instruction.

{6}      UJI 14-375 NMRA, aggravated assault with a deadly weapon against a household member, provides in pertinent part:

> For you to find the defendant guilty of aggravated assault by use of a deadly weapon [as charged in Count _____ ][1], the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

. . . .

4.      The defendant used a [ _____ ][4] [deadly weapon. The defendant used a _____ (*name of object*). A _____ (*name of object*) is a deadly weapon only if you find that a _____ (*name of object*), when used as a weapon, could cause death or great bodily harm[5]][6];

. . . .

## USE NOTE

. . . .

4.      Insert the name of the weapon. Use this alternative only if the deadly weapon is specifically listed in NMSA 1978, Section 30-1-12[(B) (1963)].

. . . .

6.      This alternative is given only if the object used is not specifically listed in Section 30-1-12[(B)].

In this case, however, instruction number three instructed the jury as follows:

> For you to find . . . Defendant guilty of [a]ggravated [a]ssault by use of a deadly weapon, as charged in Count 1, the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

> 1.      . . . Defendant held a knife against Lolita Chavez[;]

> 2.      *The knife used against Lolita Chavez is a deadly weapon*;

> 3.      [D]efendant used a knife in a manner that caused Lolita Chavez to believe she was about to be cut or stabbed;

> 4.      A reasonable person in the same circumstances as Lolita Chavez would have had the same belief;

5

5.      Lolita Chavez was a household member of [D]efendant;

6.      This happened in Eddy County New Mexico on or about the 25th day of October 2014.

(Emphasis added.)

{7}      Likewise, UJI 14-392 NMRA, aggravated battery with a deadly weapon against a household member, states in pertinent part as follows:

> For you to find the defendant guilty of aggravated battery with a deadly weapon against a household member [as charged in Count _____],[1] the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1.      The defendant touched or applied force to _____ (*name of victim*) by _____[2] with a [ _____ ][3] [deadly weapon. The defendant used a _____ (*name of instrument or object*). A _____ (*name of instrument or object*) is a deadly weapon only if you find that a _____ (*name of object*), when used as a weapon, could cause death or great bodily harm[4]][5];
>
> . . . .
>
> USE NOTE
>
> . . . .
>
> 3.      Insert the name of the weapon. Use this alternative only if the deadly weapon is specifically listed in . . . Section 30-1-12[(B)].
>
> . . . .
>
> 5.      This alternative is given only if the object used is not specifically listed in Section 30-1-12[(B)].

Instead of the above uniform instruction, the jury here was instructed as follows:

For you to find . . . Defendant guilty of [a]ggravated [b]attery against a household member by use of a deadly weapon, as charged in Count 2, the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1.    [D]efendant touched or applied force to Lolita Chavez by hitting her with a beer bottle;

2.    *The beer bottle was a deadly weapon*;

3.    [D]efendant intended to injure Lolita Chavez;

4.    Lolita Chavez was a household member of [D]efendant;

5.    This happened in Eddy County New Mexico on or about October 25th 2014.

(Emphasis added.)

{8}    The district court provided a separate jury instruction titled, "Definition of deadly weapon," which states as follows:

"Deadly weapon" means any firearm, whether loaded or unloaded; or any weapon which is capable of producing death or great bodily harm, including but not restricted to any types of daggers, brass knuckles, switchblade knives, bowie knives, poniards, butcher knives, dirk knives and all such weapons with which dangerous cuts can be given, or with which dangerous thrusts can be inflicted, including swordcanes, and any kind of sharp pointed canes, also slingshots, slung shots, bludgeons; or any other weapons with which dangerous wounds can be inflicted[.][1]

---

[1]Compare this definitional jury instruction to Section 30-1-12(B), which defines "deadly weapon" for criminal offenses:

"deadly weapon" means any firearm, whether loaded or unloaded; or any weapon which is capable of producing death or great bodily harm, including but not restricted to any types of daggers, brass knuckles,

7

**{9}** In short, the jury instructions as given did not track the language of our standard UJIs. As noted, the UJIs anticipate that findings regarding the use of deadly weapons must be included as a part of the elements instructions. Further, the use notes for the applicable UJIs state that, unless the object used is specifically listed as a deadly weapon in Section 30-1-12(B), the jury should be instructed that the object used is a deadly weapon if it could cause death or great bodily harm when used as a weapon. *See* UJI 14-375, use note 6; UJI 14-392, use note 5.[2]

**C.    Analysis**

**{10}** Having set forth the standard UJIs as well as the jury instructions given here, we now turn to our analysis using a fundamental error review. "[I]t is the fundamental right of a criminal defendant to have the jury determine whether each element of the charged offense has been proved by the state beyond a reasonable doubt." *State v. Nick R.*, 2009-NMSC-050, ¶ 37, 147 N.M. 182, 218 P.3d 868 (internal quotation marks and citation omitted). "[I]n an actual use [of a weapon] case involving an unlisted weapon, the jury must find, among other elements, that an object was actually

---

switchblade knives, bowie knives, poniards, butcher knives, dirk knives and all such weapons with which dangerous cuts can be given, or with which dangerous thrusts can be inflicted, including swordcanes, and any kind of sharp pointed canes, also slingshots, slung shots, bludgeons; or any other weapons with which dangerous wounds can be inflicted[.]

[2]We also note that, per the use notes, the instructions in this case also should have included the definition for "great bodily harm." They did not.

8

used as a weapon and that it was capable of causing the wounds described in the statute." *Id.*; *see State v. Traeger*, 2001-NMSC-022, ¶ 10, 130 N.M. 618, 29 P.3d 518 ("When an individual uses an item that is a deadly weapon as a matter of law, the jury does not consider whether the weapon is a deadly weapon—it is presumed. However, when the item is not specifically listed, it has been the longstanding rule of this [s]tate to require a jury finding that the instrument used was a deadly weapon.").

{11}     Defendant argues that in his case, the jury was not required to find each element of the charges against him beyond a reasonable doubt, due to the defect in the "deadly weapon" parts of the jury instructions. As he points out, the jury was instructed that it must find beyond a reasonable doubt that "[t]he knife used against Lolita Chavez is a deadly weapon" and "[t]he beer bottle was a deadly weapon[.]" Defendant thus contends that since the type of knife used and the beer bottle are not identified specifically in the statute as deadly weapons, the jury instructions should have included language requiring findings beyond a reasonable doubt about how the weapons were used and what damage could be caused.

{12}     "We review jury instructions to determine whether a reasonable juror would have been confused or misdirected by the jury instructions. We consider jury instructions as a whole, not singly." *State v. Montoya*, 2003-NMSC-004, ¶ 23, 133 N.M. 84, 61 P.3d 793 (citation omitted). The district court instructed the jurors that

9

they must consider the instructions as a whole, and "must not pick out one instruction or parts of an instruction and disregard others."

{13} As we have noted, the district court gave instruction number six, "[d]efinition of deadly weapon," which tracked almost exactly the language of Section 30-1-12(B). In addition to a list of *per se* weapons, it also included the language "any weapon which is capable of producing death or great bodily harm," which is nearly identical to the language anticipated by the use notes of the UJIs. "[I]n a fundamental error analysis jury instructions should be considered as a whole and a failure to include an essential element in the elements section may be corrected by subsequent proper instructions that adequately address[] the omitted element." *State v. Cunningham*, 2000-NMSC-009, ¶ 21, 128 N.M. 711, 998 P.2d 176.

{14} Defendant argues that the jurors were "instructed that the knife and beer bottle were deadly weapons without asking the jury to determine whether they were, in fact, deadly weapons and used as deadly weapons." We disagree with Defendant's characterization. The instructions do not use the *per se* language, which would ask the jury to determine only that "[D]efendant used a [beer bottle/knife]." *See* UJI 14-375, use note 4; *see also* UJI 14-392, use note 3. Instead, the instructions in this case required the jury to find that a beer bottle/knife is a "deadly weapon." In other words, the State still had to prove beyond a reasonable doubt that the knife and the beer bottle were deadly weapons. The defect here was the separate definition of a deadly weapon,

not the State's obligation to prove the elements or the jury's obligation to find that those elements were proven.

{15} In our view, the district court's jury instructions sufficiently alerted the jurors that they must decide beyond a reasonable doubt whether the objects were deadly weapons. We note as well that the prosecution asked the jury multiple times to consider the issue. In closing argument, the prosecutor said that the jury needed to make findings about whether the beer bottle or knife were deadly weapons. For example, the prosecutor argued, "One of the findings that you have to make is whether or not that beer bottle is a deadly weapon. You've been given the definition of what a deadly weapon is. Could being hit with a beer bottle cause injuries to somebody? That's a determination that you have to make." The prosecutor made similar arguments regarding the knife at issue in the assault. There is no indication that the jurors were at all confused about the instructions they were given in this case. Unlike *Samora*, 2016-NMSC-031, ¶ 32, in which the Court noted there was obvious juror confusion based on the questions asked during the trial, there is no such evidence here. The same definition of "deadly weapon" applied to both offenses, and that definition is within the common understanding of what a deadly weapon is. *Cf. State v. Barber*, 2004-NMSC-019, ¶ 22, 135 N.M. 621, 92 P.3d 633 (noting, where the definition of "possession" was at issue, that "possession" has a technical legal definition that might not be in keeping with a layman's understanding).

11

{16}    We do not disagree with Defendant that the district court should have provided the jury in Defendant's case with the proper UJIs. Indeed, we have previously said:

> When a uniform jury instruction exists, that instruction must be used without substantive modification. Failure to use a uniform jury instruction, however, does not necessarily rise to the level of fundamental error. Instead, a jury instruction is proper, and nothing more is required, if it fairly and accurately presents the law. For fundamental error to exist, the instruction given must differ materially from the uniform jury instruction, omit essential elements, or be so confusing and incomprehensible that a court cannot be certain that the jury found the essential elements under the facts of the case.

*State v. Caldwell*, 2008-NMCA-049, ¶ 24, 143 N.M. 792, 182 P.3d 775 (alteration, internal quotation marks, and citations omitted). Nonetheless, and though not ideal, the definitional instruction did track both the UJI language regarding use and purpose of the weapon and the statutory definition of a deadly weapon. We conclude that the jury instructions given in this case were adequate and did not constitute fundamental error.

## II.    Sufficiency of the Evidence

{17}    "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). The reviewing court "view[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all

conflicts in the evidence in favor of the verdict." *Cunningham*, 2000-NMSC-009, ¶ 26. We disregard all evidence and inferences that support a different result. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

{18} "Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883. Therefore, with respect to the aggravated assault with a deadly weapon against a household member charge, the State was required to prove beyond a reasonable doubt that Defendant held a knife against Chavez, that the knife used against Chavez is a deadly weapon, that Defendant used a knife in a manner that caused Chavez to believe she was about to be cut or stabbed, that a reasonable person in the same circumstances as Chavez would have had the same belief, and that Chavez was a household member of Defendant. *See* § 30-3-13; UJI 14-375.

{19} With respect to the aggravated battery with a deadly weapon against a household member charge, the State was required to prove beyond a reasonable doubt that Defendant touched or applied force to Chavez by hitting her with a beer bottle, the beer bottle was a deadly weapon, Defendant intended to injure Chavez, and Chavez was a household member of Defendant. *See* § 30-3-16; UJI 14-392.

{20} In order to prove the above elements, the State presented eyewitness testimony from Chavez that supported each of the elements. *Cf. State v. Salas*, 1999-NMCA-099, ¶ 13, 127 N.M. 686, 986 P.2d 482 (recognizing that it is for the fact-finder to

13

resolve any conflict in the testimony of the witnesses and to determine where the weight and credibility lie). We acknowledge that the evidence the State presented regarding the knife used in the aggravated assault is sparse. The State never admitted the knife as an exhibit or presented it to the jury, and the only evidence describing the knife came from Chavez's testimony that it was "not a little pocket knife; it was a big knife." The district court asked further questions of Chavez, and it appears Chavez indicated the approximate length of the knife with her hands although the estimated length is not part of the record. Notwithstanding this relatively vague description of the knife, we conclude that the evidence presented was sufficient to support the jury's finding that it was a deadly weapon. In other words, it was reasonable for the jury to determine that the knife fell within the statutory definition provided in jury instruction number six, that it was a "weapon[] with which dangerous cuts can be given, or with which dangerous thrusts can be inflicted . . . or any other weapons with which dangerous wounds can be inflicted[.]" *See* § 30-1-12(B).

{**21**}    As further support that there was insufficient evidence to convict him of either charge, Defendant contends that the State's primary witness, Chavez, was untruthful. Defendant also directs our attention to potential flaws in the police investigation of the case, such as the lack of weapon, crime scene documentation, or evidence that Defendant was in Carlsbad on the relevant date. Defendant also argues that Chavez's nephew should have been a suspect. As noted above, however, we view the evidence

14

in the light most favorable to the verdict and disregard contrary evidence and inferences.

{22}     Reviewing the sufficiency of the evidence challenges, and viewing the evidence in the light must favorable to the verdict, we conclude that the State presented sufficient evidence to support Defendant's convictions.

**CONCLUSION**

{23}     For the foregoing reasons, we affirm Defendant's convictions.

{24}     **IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Chief Judge**

**WE CONCUR:**

_____
**M. MONICA ZAMORA, Judge**

_____
**EMIL J. KIEHNE, Judge**