This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-39000**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**DOMINIC ROBERTS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**James Waylon Counts, District Judge**

Hector H. Balderas, Attorney General
Cole P. Wilson, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mark A. Peralta-Silva, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**HENDERSON, Judge.**

**{1}** Defendant Dominic Roberts appeals from the denial of his motion to dismiss on speedy trial grounds prior to his jury trial convictions for unlawful taking of a motor vehicle, contrary to NMSA 1978, Section 30-16D-1(A)(1) (2009), and conspiracy to commit unlawful taking of a motor vehicle, contrary to Section 30-16D-1(A)(1) and NMSA 1978, Section 30-28-2 (1979), both fourth-degree felonies. On appeal, Defendant raises a single issue, that he was deprived of his right to a speedy trial. Having considered the arguments and information before us, we reverse.

**DISCUSSION**[1]

**{2}**     "The right of the accused to a speedy trial is guaranteed by both the Sixth Amendment of the United States Constitution and Article II, Section 14 of the New Mexico Constitution." *State v. Spearman*, 2012-NMSC-023, ¶ 16, 283 P.3d 272. We note that Defendant raises his speedy trial claim under both the Federal and New Mexico Constitutions. Because Defendant does not assert that New Mexico's speedy trial guarantee should be interpreted any differently from the Sixth Amendment's guarantee, and our courts have not done so in the past, we treat both protections as the same here. *See id.* ¶ 16 n.1.

**{3}**     In determining whether a defendant has been deprived of the right to a speedy trial, we analyze the four factors set out by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530-32 (1972): "(1) the length of delay in bringing the case to trial, (2) the reasons for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) the prejudice to the defendant caused by the delay." *State v. Serros*, 2016-NMSC-008, ¶ 5, 366 P.3d 1121. In analyzing the *Barker* factors, "we give deference to the district court's factual findings, but we review the weighing and the balancing of the *Barker* factors de novo." *Spearman*, 2012-NMSC-023, ¶ 19 (alterations, internal quotation marks, and citation omitted). We determine whether Defendant's right to a speedy trial has been violated by analyzing the particular facts of his case. *See id.* ¶ 16.

**I.     Length of Delay**

**{4}**     "The length of the delay is a two-fold inquiry. Initially, we determine whether the delay is presumptively prejudicial. If it is presumptively prejudicial, we balance the length of the delay against the remaining three factors to assess whether the [C]onstitution has been violated." *State v. Laney*, 2003-NMCA-144, ¶ 11, 134 N.M. 648, 81 P.3d 591. The guidelines for determining whether a case is presumptively prejudicial depend on the complexity of the case: "twelve months for simple cases, fifteen months for cases of intermediate complexity, and eighteen months for complex cases." *State v. Garza*, 2009-NMSC-038, ¶ 2, 146 N.M. 499, 212 P.3d 387. The district court categorized this as a simple case, and both Defendant and the State agree. *See State v. O'Neal*, 2009-NMCA-020, ¶ 16, 145 N.M. 604, 203 P.3d 135 ("We defer to the district court's finding on the question of complexity when it is supported by substantial evidence." (internal quotation marks and citation omitted)). We agree but pause to emphasize how very simple this case was. When Defendant's trial eventually took place, the State needed only three witnesses, the victim whose truck was stolen and two investigating police officers, and the trial lasted less than a day and a half, including voir dire and closing arguments. In this simple case, a twelve-month delay is presumptively prejudicial.

**{5}**     To determine the length of delay, we must first identify the date that Defendant's right to a speedy trial attached. "In general, the right attaches when the defendant

---

1Because the parties are familiar with the factual background, this memorandum opinion does not include a background section.

becomes an accused, that is, by a filing of a formal indictment or information or arrest and holding to answer." *State v. Urban*, 2004-NMSC-007, ¶ 12, 135 N.M. 279, 87 P.3d 1061 (internal quotation marks and citation omitted). In this case, Defendant was supposed to be arraigned on the criminal information on October 3, 2016. Defendant failed to appear for this arraignment and was arrested on a warrant for that failure on February 3, 2017. The district court ruled that Defendant's right to a speedy trial attached on October 3, 2016, when he was supposed to be arraigned. Neither party takes issue with this, and, because it does not impact our disposition of this case, we accept October 3, 2016, as the beginning date for our speedy trial analysis. *See State v. Caldwell*, 2008-NMCA-049, ¶ 8, 143 N.M. 792, 182 P.3d 775 (acknowledging that this Court is not bound by a party's concession); *see also Urban*, 2004-NMSC-007, ¶ 12 (providing that "the [speedy trial] right attaches when the defendant becomes an accused, that is, by *a filing* of a formal indictment or information or arrest and holding to answer" (emphasis added) (internal quotation marks and citation omitted)). We note the district court's emphasis that "[m]ore than twelve months elapsed *from his capture following his failure to appear for arraignment*." (Emphasis added.) As stated, however, we calculate Defendant's speedy trial right from the scheduled arraignment rather than his later arrest. Between the date of Defendant's scheduled arraignment on October 3, 2016, and Defendant's trial on December 4, 2019, the case was pending for approximately thirty-eight months, which far exceeds the twelve-month threshold for a simple case. This demonstrates a presumptively prejudicial delay, requiring this Court to weigh and balance the four factors.

**{6}** In determining the weight to be given to the length of delay, "the greater the delay[,] the more heavily it will potentially weigh against the [s]tate." *Garza*, 2009-NMSC-038, ¶ 24. Here, the delay is more than three times as long as the twelve-month threshold and, therefore, this factor weighs heavily against the State. *See State v. Taylor*, 2015-NMCA-012, ¶ 9, 343 P.3d 199 (weighing delay that was nearly twice the "twelve-month threshold for [a] simple case[,]" heavily against the state). The State concedes that this was a "substantial delay" and that this factor weighs heavily against the State.

## II.     Reasons for Delay

**{7}** "Closely related to length of delay is the reason the government assigns to justify the delay[,]" with "different weights [being] assigned to different reasons for the delay." *Garza*, 2009-NMSC-038, ¶ 25 (internal quotation marks and citations omitted). There are three types of delay that may be weighed against the state at varying levels: (1) deliberate attempts to delay the trial to thwart the defense weigh heavily against the state; (2) negligent or administrative delay weighs less heavily against the state, but "[a]s the length of delay increases, negligent or administrative delay weighs more heavily against the [s]tate[;]" (3) delay that is justified by a valid reason is weighed neutrally. *Serros*, 2016-NMSC-008, ¶ 29. "The reasons for a period of the delay may either heighten or temper the prejudice to the defendant caused by the length of the delay." *Garza*, 2009-NMSC-038, ¶ 25 (internal quotation marks and citation omitted).

"Finally, any delay caused by the defendant generally weighs against the defendant." *State v. Deans*, 2019-NMCA-015, ¶ 10, 435 P.3d 1280.

**{8}** Turning to the first period of delay, we again observe that Defendant's arraignment was scheduled for October 3, 2016; Defendant failed to appear and was arrested on February 3, 2017. Defendant does not dispute that these four months of delay must be attributed entirely to him. This leaves approximately thirty-four months to consider, during which Defendant was held without bond until trial.

**{9}** The parties do not disagree significantly that the next period of delay lasted for approximately the next twenty-seven months, from February 3, 2017, until May 13, 2019. Upon our review of the record, there is another period of delay to which we need to apply the same analysis; we also include the period of time from August 5, 2019, until December 4, 2019, in this part of our inquiry. During these thirty-one months, Defendant's trial setting was vacated for the district court's administrative reasons an extraordinary eight times and one time upon the State's request for a continuance. The district court vacated Defendant's first trial setting on May 3, 2017, when another case higher on the trailing docket went to trial. The district court continued Defendant's second trial setting on August 7, 2017, upon a motion from the State due to trial counsel's scheduling conflict; Defendant concurred in this continuance. The district court vacated Defendant's third trial setting on November 27, 2017, when another case higher on the trailing docket went to trial. The district court vacated Defendant's fourth trial setting on February 9, 2018, because the judge was ill. The district court vacated Defendant's fifth trial setting on May 7, 2018, when another case higher on the trailing docket went to trial. The district court vacated Defendant's sixth trial setting on August 21, 2018, because the judge was unavailable. The district court vacated Defendant's seventh trial setting on November 14, 2018, when another case higher on the trailing docket went to trial. The district court vacated Defendant's eighth trial setting on February 1, 2019, because the judge was required to testify before the Senate Finance Committee on January 31, 2019. Finally, the district court vacated Defendant's tenth trial setting on August 5, 2019, when another case higher on the trailing docket went to trial.

**{10}** In denying Defendant's motion to dismiss on speedy trial grounds, the district court addressed the delay caused by the court's schedule. The district court asserted that the "Twelfth Judicial District conducts more jury trials per year, per judge than any other judicial district in the state." The district court concluded that the "delay between arrest on the bench warrant and trial was approximately [thirty-three] months. This is a long delay, but not an exceptionally long delay, given the court's heavy docket and busy trial schedule which attempts to address the heavy docket."

**{11}** In general, again, "negligent or administrative delay weighs against the state, though not heavily." *State v. Suskiewich*, 2016-NMCA-004, ¶ 9, 363 P.3d 1247 (alterations, internal quotation marks, and citation omitted). "More neutral reasons for delay, such as negligent or administrative delay caused, for example, by overcrowded courts, the reassignment of judges, or governmental negligence, weighs against the

state, though less heavily." *State v. Flores*, 2015-NMCA-081, ¶ 8, 355 P.3d 81 (alteration, omission, internal quotations marks, and citations omitted). In this case, the parties generally agree that this period of delay in Defendant's case is administrative and therefore is attributed to the State. We agree with the parties that this entire thirty-one month period amounts to administrative delay and is attributable to the State. *See Garza*, 2009-NMSC-038, ¶ 29 (stating that delays caused by administrative burdens such as congested dockets weigh against the state); *State v. Salazar*, 2018-NMCA-030, ¶ 23, 458 P.3d 485 (characterizing delay caused by the state's motion for continuance as administrative delay).

**{12}** However, Defendant asks this Court to weigh this period of delay heavily against the State, because the administrative delay was "so great in length." The State asserts that this delay should only be weighed slightly against the State, as is usual with administrative delay. We recognize that a delay caused by eight vacated trial settings on a simple case is quite extraordinary, while also acknowledging that there was one State continuance in that period, with which Defendant concurred. We note that the district court emphasized that it denied Defendant's motion to dismiss on speedy trial grounds because it has a crowded docket. However, this cannot justify the abrogation of the right to a speedy trial. *See generally Garza*, 2009-NMSC-038, ¶ 29 (indicating that delays associated with the administrative burdens on the criminal justice system, such as overcrowded courts, congested dockets or the unavailability of judges, or understaffed offices, are all considered negligent delays that must be weighed against the state); *State v. Gallegos*, 2016-NMCA-076, ¶ 9, 387 P.3d 296 (observing that "administrative delay is weighed against the [s]tate because, at bottom, the burden rests with the government to bring a defendant to trial").

**{13}** Where excessively protracted, administrative or negligent delays will weigh heavily against the state. *See Flores*, 2015-NMCA-081, ¶ 9 ("[O]ur tolerance of negligent or administrative delay varies inversely with its protractedness. Thus, where the government's negligence and administrative burdens cause an excessively protracted delay, we weigh such delay heavily against the state." (alteration, internal quotation marks, and citation omitted)); *Taylor*, 2015-NMCA-012, ¶ 25 (concluding that delays caused by the state's negligence and lack of diligence weigh heavily against the state where there was an "excessively long" two-year delay in a simple case); *State v. Steinmetz*, 2014-NMCA-070, ¶ 7, 327 P.3d 1145 ("The degree of weight we assign against the prosecution for negligent delay is closely related to the length of the delay; the longer the delay, or the greater the threat to the fairness to the defendant, the less tolerant we are of the delay." (alterations, internal quotation marks, and citation omitted)).

**{14}** We recognize that this case is somewhat unique because the delay was not caused by the State as a party. The State points out that in *Taylor*, "the [s]tate was inexcusably indifferent to its affirmative obligation to bring a simple case to trial." 2015-NMCA-012, ¶ 16. Indeed, there is no allegation that the State's actions in this case were similarly unpardonable. Instead, this very lengthy period of delay was caused by the district court's congested docket and the unavailability of the judge. However, this thirty-

one month period of delay alone was well over twice as long as the twelve-month threshold for Defendant's simple case. " 'A defendant has no duty to bring himself to trial; the [s]tate has that duty as well as the duty of insuring that the trial is consistent with due process.' " *Serros*, 2016-NMSC-008, ¶ 38 (quoting *Barker*, 407 U.S. at 527).

**{15}** In *Garza*, our Supreme Court decided that

> [b]ecause the delay was negligent, the extent to which it weighs against the [s]tate depends on the length of the delay. As described above, the delay in this case extends only slightly beyond the threshold to trigger the speedy trial inquiry and, therefore, is not extraordinary. Accordingly, because the delay was negligent but not protracted, this factor weighs only slightly in [the d]efendant's favor.

2009-NMSC-038, ¶ 30. Applying this analysis to the thirty-one months of administrative delay in Defendant's case, due largely to the district court's eight trial continuances, we view this as a much longer delay than that in *Garza*. Therefore, we conclude this delay was extraordinary and protracted, and we weigh this factor moderately to heavily in Defendant's favor for this thirty-one month period. *See Flores*, 2015-NMCA-081, ¶ 37 (weighing delay of sixty-two months, at least thirty-six months of which was attributable to the state's negligence and administrative burdens, heavily against the state).

**{16}** There is a third period of delay for us to review, the three-month period from May 13, 2019, through August 5, 2019.[2] The parties do not disagree that this delay was caused when the State identified that Defendant's counsel had a conflict of interest because he represented both Defendant and Defendant's codefendant. The State filed an emergency motion to this effect on May 10, 2019. Defense counsel filed a motion to withdraw on the same date. This conflict of interest and withdrawal caused the continuance of the May 13, 2019 trial date. The district court concluded that these three months should be considered a defense delay.

**{17}** On appeal, Defendant claims that this delay should not be attributed to Defendant because he did not know about the conflict of interest, but the State was aware of it, as evidenced by the State's motion. Defendant claims that this period of delay was caused by attorney neglect, for which it would be inappropriate to penalize him. Defendant asks that we weigh this period against the State. On the other hand, the State notes that Defendant's first trial counsel acknowledged responsibility for not discovering the conflict sooner. The State asks us to attribute this delay to Defendant.

**{18}** There is no question that this three-month delay was caused by defense counsel's conflict of interest, which was particularly unfortunate given how long the case had been pending when the State discovered the conflict. Delays caused by the defense will not be held against the defendant where the record shows that the defendant did not consent to, acquiesce to, or cause the delays; rather, they are

---

2We note that on August 5, 2019, the district court vacated Defendant's tenth trial setting when another case higher on the trailing docket went to trial.

attributable solely to actions of defense counsel. *See Serros*, 2016-NMSC-008, ¶ 36. Where this occurs and the defendant is detained, unreasonable or extraordinary delay will be held against the state for "its failure to push the case to trial." *Id.* ¶ 37. In this case, where the delay was caused solely by defense counsel's failure to identify a conflict of interest, we cannot say that this delay should be held against Defendant. Nor can we conclude that this three-month delay should be held against the State, where the three-month delay was neither unreasonable nor extraordinary. Thus, we conclude that this period of delay was neutral.

**{19}** In sum, there were three periods of delay. The first four months of the delay weighs against Defendant for failing to appear. The three-month period caused by defense counsel's conflict of interest weighs neutrally. Finally, the thirty-one months of delay caused by eight administrative continuances (minus the State's continuance, to which Defendant concurred) weigh moderately to heavily against the State. Overall, the reasons for delay weigh moderately against the State.

### III.    Assertion of the Right

**{20}** In evaluating the third *Barker* factor, we look to the "frequency and force" of Defendant's objections to the delay. *Garza*, 2009-NMSC-038, ¶ 32 (internal quotation marks and citation omitted). We assess the timing of Defendant's assertions of his right to a speedy trial, the manner in which Defendant asserted the right, and his actions with regard to the delay. *See id.* We afford "relatively little weight" to pro forma assertions. *Urban*, 2004-NMSC-007, ¶ 16. A motion to dismiss on speedy trial grounds is an assertion of the right that is weighed against the state, though not heavily. *State v. Lujan*, 2015-NMCA-032, ¶ 18, 345 P.3d 1103.

**{21}** Defendant made assertions of his right to a speedy trial five times in the district court. Defendant made two pro forma demands for a speedy trial through his first counsel and a pro forma demand with the entry of appearance of his second trial counsel. We assign little weight to these three demands. *See Urban*, 2004-NMSC-007, ¶ 16.

**{22}** We assign Defendant's other two demands, styled as motions to dismiss on speedy trial grounds, more weight. Defendant's first counsel filed a motion to dismiss on April 1, 2019, over a month prior to Defendant's ninth trial setting on May 13, 2019. The district court orally denied that motion following a hearing. Defendant's second counsel filed a motion to dismiss on October 17, 2019, well over a month before Defendant's eleventh and final trial setting on December 4, 2019. These motions appear to be genuine attempts by Defendant to have this case tried.

**{23}** Further, we note that throughout nearly the entirety of this case, Defendant did not cause or acquiesce to the delay. Excepting Defendant's own failure to appear for the first four months of this case, his concurrence with the State's continuance for his second trial setting, and the delay caused by Defendant's first counsel's conflict of interest, which we do not hold against him, there is no evidence that Defendant caused

any of the extraordinary delay of this simple case. *See Garza*, 2009-NMSC-038, ¶ 32 (stating that where a defendant's assertions of the right are closely followed by motions that seek to delay the proceedings or seek to replace defense counsel, such motions will mitigate the force of the defendant's assertion of the right).

**{24}** As the State argues, however, the strength of Defendant's assertion is somewhat dampened by the fact that Defendant did not file a motion to dismiss on speedy trial grounds until April 1, 2019, although the initial missed arraignment in this case was scheduled for October 3, 2016, and Defendant had been in custody on this case since February 2017. Defendant's assertion of the right could have been more vigorous. *See State v. Brown*, 2017-NMCA-046, ¶ 32, 396 P.3d 171 (determining that, where the defendant made numerous assertions but also contributed to some of the delay, the fourth *Barker* factor weighed in the defendant's favor but not strongly); *see also Spearman*, 2012-NMSC-023, ¶¶ 32-33 (determining that, where the defendant asserted his right in an early motion, opposed at least one requested continuance, and filed a motion to dismiss, "[the d]efendant did not aggressively assert the right, [although] he did not acquiesce to the delay" (alterations and internal quotation marks omitted)). In light of all these factual circumstances, we weigh this factor in Defendant's favor, though not heavily.

## IV.    Prejudice

**{25}** We turn next to the last *Barker* factor, prejudice to Defendant caused by the delay. "The 'heart' of the speedy trial right 'is preventing prejudice to the accused.' " *Lujan*, 2015-NMCA-032, ¶ 20 (quoting *Garza*, 2009-NMSC-038, ¶ 12). The right to a speedy trial seeks "to prevent oppressive pretrial incarceration; . . . minimize anxiety and concern of the accused; . . . and . . . limit the possibility that the defense will be impaired." *Serros*, 2016-NMSC-008, ¶ 84 (internal quotation marks and citation omitted). Generally, the defendant has the burden of proof to show "particularized prejudice." *Id.* ¶ 86 (internal quotation marks and citation omitted). Because "some degree of oppression and anxiety is inherent for every defendant who is jailed while awaiting trial," the defendant bears the burden to establish "that the pretrial incarceration or the anxiety suffered [by the defendant] is undue." *Id.* ¶ 89 (alterations, internal quotation marks, and citation omitted). "However, if the length of delay and the reasons for the delay weigh heavily in [the] defendant's favor and [the] defendant has asserted his right and not acquiesced to the delay, then the defendant need not show prejudice for a court to conclude that the defendant's right has been violated." *Id.* ¶ 86 (internal quotation marks and citation omitted). Because we have determined that the reasons for the delay and the assertion of the right did not weigh *heavily* in Defendant's favor, Defendant must establish the prejudice factor in order to show that his right to a speedy trial has been violated. *See id.*

**{26}** To determine if Defendant was prejudiced, we consider whether there was (1) undue and oppressive pretrial incarceration; (2) anxiety and concern of the accused; and (3) impairment of the defense. *See Garza*, 2009-NMSC-038, ¶ 12. The first interest examined in the prejudice portion of the speedy trial analysis is the oppressive nature of

the pretrial incarceration. Whether the pretrial incarceration is oppressive "depends on the length of incarceration, whether the defendant obtained release prior to trial, and what prejudicial effects the defendant has shown as a result of the incarceration." *Serros*, 2016-NMSC-008, ¶ 89 (internal quotation marks and citation omitted). "It cannot be denied that two-and-one-half years of pretrial incarceration[,] one's life on indefinite hold, waiting for one's trial to commence—is very substantial prejudice, of the precise kind that the Speedy Trial Clause was meant to avoid." *State v. Moreno*, 2010-NMCA-044, ¶ 37, 148 N.M. 253, 233 P.3d 782 (alteration, internal quotation marks, and citation omitted). *Compare Serros*, 2016-NMSC-008, ¶ 90 (holding that pretrial incarceration of over four years is "oppressive on its face"), *with Salandre v. State*, 1991-NMSC-016, ¶ 29, 111 N.M. 422, 806 P.2d 562 (holding that bond restrictions for one month were not oppressive).

**{27}** Defendant spent an exceedingly long time in custody without bond on this simple case: thirty-four months pretrial incarceration on a criminal information that charged him with two fourth-degree felonies, each with a penalty of eighteen months of incarceration. As thirty-four months of incarceration occurred in this case—more than "two-and-one-half" years, a length of incarceration cited to be "very substantial[ly] prejudic[ial]" in *Garza*—we conclude that Defendant was prejudiced by his pretrial incarceration. 2009-NMSC-038, ¶ 35; *see also Brown*, 2017-NMCA-046, ¶ 37 (rejecting the state's argument that a defendant incarcerated for thirty-three months did not suffer particularized prejudice).

**{28}** A speedy trial analysis of prejudice also seeks to "minimize [the] anxiety and concern of the accused." *Serros*, 2016-NMSC-008, ¶ 84 (internal quotation marks and citation omitted). The district court found that

> Defendant testified he has suffered prejudice as a result of his incarceration awaiting trial as follows: anxiety which has required medication; loss of a job . . . ; his mother and brother with whom he had lived prior to arrest moved from the area and they were unable to visit him in the detention center.

The district court also noted that Defendant was being held in custody on another case on criminal charges that arose while he was a fugitive during the first four months of this case. The district court made a finding that Defendant was being held on both cases. Finally, the district court concluded:

> Although Defendant did articulate prejudice from the pre[]trial detention, none of the prejudice affected his ability to defend himself. The other prejudicial impacts are mitigated somewhat by the fact that . . . Defendant was being held on another case at the same time and would have in all likelihood been in custody anyway. The prejudice is weighed only slightly against the State.

Thus, it appears that the district court acknowledged that Defendant suffered particularized prejudice from the lengthy delay of this case. We agree. The circumstances noted by the district court in its findings factor into the level of prejudice suffered by Defendant and support the district court's conclusion that Defendant suffered prejudice due to his thirty-four-month period of pretrial incarceration. As a result, we agree that Defendant established both undue pretrial incarceration and undue anxiety suffered during the pendency of his case.

{29}   However, we must also consider the district court's conclusion that the "other prejudicial impacts are mitigated somewhat by the fact that . . . Defendant was being held on another case at the same time and would have in all likelihood been in custody anyway." Indeed, New Mexico courts have held that a defendant did not suffer oppressive pretrial incarceration because the defendant was incarcerated on other charges during the relevant time period. *See Urban*, 2004-NMSC-007, ¶¶ 5, 17 (concluding that the defendant was not subject to oppressive pretrial incarceration when he was incarcerated on other charges at the time of his arraignment); *see also State v. Prieto-Lozoya*, 2021-NMCA-019, ¶ 47, 488 P.3d 715 (concluding, in part, that the defendant suffered little, if any, prejudice when the defendant "was in custody on other charges at the time of his arrest in this case and continued to be held on those charges during the vast majority of his pretrial incarceration"), *cert. denied*, 2021-NMCERT-___ (No. S-1-SC-38728, Mar. 31, 2021).

{30}   Defendant argues that we should distinguish his case from these precedents because Defendant "was held in [his] other case on a bond that afforded the possibility of release and not on a 'no bond hold' as he was in [the case at hand]." Defendant asks us to take judicial notice of at least one order in the other case holding him in custody during this time period.[3] The State fails to address this argument in its answer brief. We agree with the district court that, in accordance with our precedent, the fact that Defendant was in custody on another matter somewhat mitigated the prejudice he suffered in this case. However, this does not cause us to discount entirely the oppressive length of Defendant's pretrial incarceration or the undue anxiety Defendant suffered.

{31}   One final aspect of the prejudice factor that generally must be analyzed is "the possibility that the defense will be impaired." *Serros*, 2016-NMSC-008, ¶ 84 (internal quotation marks and citation omitted). We note that Defendant does not argue that his defense was impaired, and therefore, we need not address this factor in our analysis.

{32}   Overall, we agree with the district court that Defendant suffered prejudice from this delay. While this prejudice was mitigated somewhat by Defendant's incarceration on another criminal case, we conclude that this prejudice was "actual," "particularized," and that it may be considered "undue" because it "continued for an unacceptably long

---

3Defendant also was held in D-1215-CR-2017-00061 for charges Defendant picked up while on conditions of release in this case. Defendant points us to a release order setting a secured bond of $50,000 in that matter on March 10, 2017. We note that the complicated history of that case is not part of the record before us in this case.

period." *Garza*, 2009-NMSC-038, ¶¶ 13, 35; *Salandre*, 1991-NMSC-016, ¶ 32. Under these circumstances, we conclude that the prejudice factor should weigh moderately in Defendant's favor.

## V.    Balancing the Factors

**{33}**    In weighing the speedy trial factors, we recognize no single consideration is dispositive. *See, e.g.*, *Barker*, 407 U.S. at 533 (explaining that "they are related factors and must be considered together with such other circumstances as may be relevant"). The extraordinary length of delay for administrative reasons in this simple case weighs heavily in Defendant's favor. The primarily administrative reasons for the delay weigh moderately to heavily against the State. The assertion of the right weighs in Defendant's favor, but not heavily. Finally, the prejudice factor also weighed in Defendant's favor, moderately. Under the circumstances of this case, we conclude that the *Barker* factors weigh sufficiently in Defendant's favor to establish a violation of his right to a speedy trial. *See State v. Montoya*, 2015-NMCA-056, ¶ 33, 348 P.3d 1057 (holding that where the length of the delay and reasons for the delay weigh moderately to heavily in the defendant's favor, and the defendant's assertion of the right and prejudice weigh slightly to moderately in the defendant's favor, and none of the factors weighs in the state's favor, the defendant's right to a speedy trial was violated); *Brown*, 2017-NMCA-046, ¶ 43 (holding that where the length of delay weighs heavily in the defendant's favor, the reasons for the delay weigh slightly to moderately in favor of the defendant, the assertion of the right weighs in the defendant's favor but not heavily in his favor, and none of the factors weighs in the state's favor, the defendant's right to a speedy trial was violated).

## CONCLUSION

**{34}**    For the foregoing reasons, we reverse the denial of Defendant's motion to dismiss for violation of his right to a speedy trial and remand for proceedings consistent with this opinion.

**{35}    IT IS SO ORDERED.**

**SHAMMARA H. HENDERSON, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**JANE B. YOHALEM, Judge**